DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant/Appellant Andrew Page appeals from the decision of the Summit County Court of Common Pleas finding him guilty of complicity to commit burglary. We affirm.
 {¶ 2} On May 16, 2006, Defendant and his friend, Ian DeStephen, were in Copley in the vicinity of State Route 21 and Copley Road. Defendant approached a homeowner who was working in her garage behind her house. He told her that his truck had overheated and asked for a gallon of water, which the homeowner gave him. Within minutes of Defendant's leaving the property with the water, the homeowner saw someone entering her home through the back door. She and her *Page 2 
husband entered by the same door and found DeStephen, whom they did not know, in their bedroom looking out the back window toward the garage. They held DeStephen until the police could arrive, and he admitted that he was attempting to steal money from their home. Defendant was arrested approximately one quarter of a mile from the house near the truck that belonged to DeStephen. The police impounded the truck and, upon further examination, determined that the truck was operational and had not overheated.
 {¶ 3} DeStephen pled guilty to the charge of burglary on August 10, 2006, and agreed to testify against Defendant. Defendant's trial began on August 10, 2006, and concluded August 11, 2006. Several of the officers who responded at the scene testified during the trial for the prosecution, as did Joan and Dwight Gangle, the victims. DeStephen also testified. Defendant took the stand in his own defense. The jury found Defendant guilty of complicity to commit burglary. He was sentenced to three years in prison on September 5, 2006.
 {¶ 4} Defendant timely appeals, raising three assignments of error for our review. To facilitate discussion, we will address Defendant's assignments of error in a different order from that in which he presented them.
 THIRD ASSIGNMENT OF ERROR *Page 3 "The convictions should be reversed because they are against the manifest weight of the evidence and because the evidence supporting them was insufficient as a matter of law to prove the conviction beyond a reasonable doubt in violation of the United States Constitution."
 {¶ 5} Defendant contends that his conviction was not supported by sufficient evidence. He also claims that the jury's verdict was against the manifest weight of the evidence presented.
 {¶ 6} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v.Wolfe (1988), 51 Ohio App.3d 215, 216, citing State v. Bridgeman (1978),55 Ohio St.2d 261. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley *Page 4 
(Mar. 15, 2000), 9th Dist. No. CA19600, at 1, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts, (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 8} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} In the instant case, Defendant was charged with complicity to commit burglary. Joan and Dwight Gangle testified for the prosecution. The Gangles lived at 4092 Copley Road in Copley. Their house faced directly onto the street, and behind the house they had a large garage with an office attached. The office could not easily be seen from the street. On May 16, 2007, while Mrs. Gangle was working in the garage, Defendant approached her wearing jeans and a red hooded sweatshirt with the hood pulled up. Mrs. Gangle noted that, while it had rained earlier in the day, it was not raining when Defendant came to the *Page 5 
garage, and it was probably in the mid-seventies. Defendant explained that his truck had overheated and that he needed a gallon of water. Mrs. Gangle asked why he had come to her house when there was a gas station very near where the Defendant told her he had left his truck, but he did not provide an answer. She also asked whether he had knocked at the front door first, and he indicated that he could see her in the office from the street, and he had come straight back. She described him as being shy and nervous, and said that he avoided eye contact. She filled a gallon milk jug in the garage with water, and then began looking for a cap. He told her not to worry about it, and left with the water.
 {¶ 10} Within three minutes, Mrs. Gangle saw someone entering her house by the back door. She saw the sliding screen door being closed behind the individual, whom she later determined was DeStephen. She and her husband entered the house to find him, and Mrs. Gangle saw him in the bedroom looking out the window toward the garage, where Defendant had just seen Mr. and Mrs. Gangle. He ran when Mrs. Gangle confronted him, and Mr. Gangle managed to catch and hold him. Mrs. Gangle called the police. While she was on the phone, DeStephen broke loose and, in the process of catching him, Mr. Gangle suffered bruised ribs and a scratch on his back. By the time Mr. Gangle had regained control of DeStephen, the police had arrived.
 {¶ 11} While Mrs. Gangle was on the stand, the prosecution presented a series of photographs to Mrs. Gangle, which she identified as pictures of her *Page 6 
house, including a picture of the door through which DeStephen entered and the view of the garage from the bedroom window. She also identified the milk jug she had given to Defendant.
 {¶ 12} Mr. Gangle provided additional testimony about his encounter with DeStephen. He indicated that he had asked DeStephen why he was in the house, and DeStephen had at first said he was looking for his friend who had come to ask for water. Mr. Gangle, not believing that DeStephen would look inside a stranger's house for a person who had come looking for a jug of water, asked the question again, and DeStephen admitted that he had come to steal money.
 {¶ 13} DeStephen testified that he and Defendant had set out for Copley on the morning of May 16, 2006, intending to rob the Gangles. Both men were friends with the Gangles' grandson, Brandon, who had often bragged to them that he regularly stole money from a box that his grandparents kept in their bedroom. He often took several hundred dollars at a time. In the past, DeStephen had given Brandon rides to the Gangles' home and waited in the truck while Brandon went into the house and took money. DeStephen indicated that, on at least one of those occasions, Defendant had accompanied him on the trip.
 {¶ 14} On May 16, 2006, DeStephen picked Defendant up in his stepfather's truck. During the drive, Defendant and DeStephen planned how they would commit the robbery. DeStephen had to pass the exit for Copley Road because of construction, but the men took the next exit and re-entered the highway *Page 7 
in the opposite direction. When they first drove past the Gangles' home, they saw an SUV in the driveway with the hatch open, which indicated that the Gangles were home. DeStephen and Defendant proceeded to drive around the area for two to three hours longer, waiting for the Gangles to leave. Finally, they agreed that they would park the truck off of Copley Road on Spafford, and that Defendant would approach the Gangles to ask for water for the truck, which he would say had overheated. Meanwhile, DeStephen would hide in the bushes and wait for Defendant to give him a sign that he should enter the house. They did so, and Defendant, after he had gotten the water, indicated to DeStephen that the Gangles were in the garage and that he should enter the house, which he did.
 {¶ 15} DeStephen identified a series of pictures of the Gangles' home, including pictures of the bushes where he hid and the back door that he used to enter the home. He also identified pictures of his stepfather's truck and the place where it was parked. One picture showed a large bottle of Peak coolant lying on the floor in the passenger side footbed. DeStephen said he did not remember seeing the coolant that day.
 {¶ 16} Several police officers also testified during the trial. Sergeant Buza, an officer with the Fairlawn Police Department, which has a cooperative agreement with the Copley Police Department, testified that he had reported to the scene and had been told that there was a young man who had come to ask for water just before DeStephen entered the home, and that he was walking quickly *Page 8 
through a new development nearby. Sgt. Buza found him in the development and said he was looking over his shoulder toward the Gangles' home. Both Sgt. Buza and Officer Krunich of the Copley Police Department inspected the truck and found no sign that it had ever overheated: there was no coolant leaking from the reservoir, all of the fluids were at normal levels, and the belts and hoses appeared to be functional. Ofcr. Krunich was able to start the truck the next day in the impound lot, and kept it running for 20 minutes. He also observed a large container of coolant lying on the floor on the passenger side while he compiled the tow inventory report that day. Detective Moore, a detective with the Copley Police Department, testified that he had photographed the truck on the day of the incident and he had seen the bottle of coolant. He had seen no signs that the truck had overheated.
 {¶ 17} When Defendant testified, he indicated that he had no idea where DeStephen was taking him, and he thought DeStephen was picking something up for his stepfather. DeStephen drove because Defendant had chosen not to get his driver's license. When they arrived in Copley and drove around several times, Defendant said he thought DeStephen was lost. Then he said that DeStephen said the truck was overheating. He parked and sent Defendant to a house to find water for the truck. He gave no indication why he did not go to the gas station they had just passed as they exited the highway. He said he tried to get water from the Gangles' neighbors, who were not home. He then went to the Gangles and got *Page 9 
water, and when he got back to the truck, DeStephen was gone. He wandered the new development looking around for DeStephen, and that was when Sgt. Buza found him. On cross examination, the prosecution questioned Defendant about his history, including several driving-related charges that had precluded his getting a license. He also testified that he had never noticed the large container of antifreeze lying on the floor of the truck under his feet.
 {¶ 18} We find that the jury's verdict was not contrary to the manifest weight of the evidence. There was substantial evidence that Defendant had acted to facilitate DeStephen's burglary of the Gangles' home. The prosecution was required to prove that Defendant had been complicit in the commission of the offense of burglary, which is defined in R.C. 2923.03 as follows:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 "(1) Solicit or procure another to commit the offense;
 "(2) Aid or abet another in committing the offense;
 "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 19} In his argument, Defendant does not contend that the state failed to prove any particular element of the crime. Rather, he contends that his own testimony weighed heavily in his favor. We find that it did not. While Defendant presented the jury with testimony that he did not know what was happening when *Page 10 
DeStephen drove to Copley, and that he did not know whether the car was actually overheating because of his unfamiliarity with cars, and that he retrieved water from the Gangles' home on DeStephen's urging and with no ill intent, the jury was free to believe the ample evidence presented by the prosecution to the contrary. The prosecution provided evidence that Defendant was aware that Brandon had stolen from the Gangles in the past, and was familiar with where the Gangles lived. Furthermore, it provided evidence that Defendant drove with DeStephen past a gas station, parked the truck within walking distance of the Gangles' home after driving the neighborhood and waiting for them to leave, and requested water from Mrs. Gangle with the intention of giving DeStephen information such that he could enter the home and steal money.
 {¶ 20} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v.Royston (Dec. 15, 1999), 9th Dist. No. 19182, at *5, quoting State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *2. In this case, the evidence presented by Defendant was not overwhelmingly in his favor. Having reviewed the testimony and evidence presented, and having considered the reasonable inferences therefrom, we find that the jury did not lose its way in determining that Defendant had acted in complicity with DeStephen in committing burglary of the Gangles' home. The jury's verdict was not against the *Page 11 
manifest weight of the evidence, and therefore the evidence was sufficient to support a conviction. See Roberts at *2.
 FIRST ASSIGNMENT OF ERROR "The trial court deprived [Defendant] of a fair trial and due process of law by failing to properly instruct the jury."
 {¶ 21} Defendant contends that the trial court failed to instruct the jury on each element of the charge of burglary, thereby depriving Defendant of a fair trial. However, he concedes that no objection was made at trial to the court's instruction of the jury.
 {¶ 22} The failure to object to the perceived errors in jury instructions as required by Crim.R. 30, is a waiver of the issue on appeal. State v. Williams (1977), 51 Ohio St.2d 112; Crim.R. 30(A). Crim.R. 30(A) provides, in pertinent part, as follows:
 "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
However, the failure to object to the instructions may involve the plain error standard upon review. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The plain error rule should be applied with utmost caution and invoked only under exceptional circumstances, in order to *Page 12 
prevent a manifest miscarriage of justice. State v. Cooperrider (1983),4 Ohio St.3d 226, 227.
 {¶ 23} The Supreme Court of Ohio has held that "(failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B)." State v.Adams (1980), 62 Ohio St.2d 151, paragraph two of syllabus. In the absence of per se plain error, an appellant must demonstrate from the record that the outcome of the trial would have been different but for the trial court's error. State v. Jett (July 28, 1993), 9th Dist. No. 2789, at *1. However, rather than demonstrate prejudice, Defendant has alleged that the trial court's error is structural error. Structural error is error in the actual framework of the proceedings themselves, rather than an error in the trial process itself. See Arizona v.Fulminante (1991), 499 U.S. 279, 310. Structural error "necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Washington v. Recuenco (2006),126 S.Ct. 2546, 2551, quoting Neder v. United States (1999), 527 U.S. 1, 9.
 {¶ 24} The prosecution concedes that the trial court erred by not giving the jury the final element of burglary in its charge, namely the intent to commit a criminal offense in the house. See R.C.2911.12(A)(1). However, the commission of error is not sufficient to constitute plain error, nor is it sufficient to demonstrate that the trial court committed structural error. In fact, although the United States *Page 13 
Supreme Court found that the jury had not been instructed on a material element of a charged crime in Nader, it still held that such an error was subject to harmless error analysis and was not structural, because "an instruction that omits an element of the offense does notnecessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder,527 U.S. at 9 (Emphasis sic). The Court later reinforced the Neder ruling inRecuenco, holding that, "(f)ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." Recuenco, 126 S.Ct. at 2553. Therefore, Defendant's argument that the trial court's error is structural must fail.
 {¶ 25} As Defendant has not shown that the trial court committed structural error, he must then demonstrate that prejudice resulted from the failure to instruct the jury properly. He has not attempted to demonstrate any prejudice. We find that the testimony before the jury, as recorded above, provided ample evidence of Defendant's involvement in a plan to burglarize the Gangles' home. The prosecution provided the testimony of DeStephen, who indicated that he and Defendant had formulated a plan, and that they had driven the area waiting for the Gangles to leave. He also testified that Defendant willingly agreed to ask the Gangles for water so that he could establish where they were in the home and whether DeStephen was clear to enter the home. Moreover, the police offered testimony that the car had not overheated and that, even if it had, a large bottle of coolant was directly under Defendant's feet in the footwell of the truck. Contrary *Page 14 
to Defendant's testimony on direct examination, the prosecution established on cross examination that he had several driving offenses and had lost all driving privileges, thereby calling into question his credibility. The evidence of intent to commit a crime in the home was substantial, and the court's failure to provide instruction on that element did not render the trial "fundamentally unfair". Neder,527 U.S. at 9.
 {¶ 26} We find that Defendant has demonstrated that error occurred in the trial court, but that the error does not amount to structural error. Defendant has not demonstrated prejudice resulting from the trial court's error, nor do we find any such prejudice in our examination of the record. Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "The trial court erred when it permitted the police report to go to the jury."
 {¶ 27} Defendant contends that the trial court erred by allowing the jury to consider the police tow report as evidence.
 {¶ 28} A trial court's admission of evidence is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Under this standard of *Page 15 
review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd, 66 Ohio St.3d 619,621.
 {¶ 29} Defendant concedes that he did not object to the admission of the tow report in the trial court, either at the time it was offered by the prosecution or at the end of the case during the court's review of admitted evidence. Failure to object to the admission of evidence at trial constitutes a waiver of all but plain error on appeal. State v.Jones, 9th Dist. No. 22545, 2005-Ohio-5502, at ¶ 8, citing State v.Frazier (1995), 73 Ohio St.3d 323, 332. As indicated above, plain error requires that error be committed by the trial court, and that Defendant demonstrate that he was prejudiced by that error. Jett at *1.
 {¶ 30} However, Defendant did not simply fail to object to the admission of the tow report. He never objected to the fact that Det. Moore read the contents of the tow report into the record from the witness stand. He also did not object when the trial court reviewed the list of exhibits to be admitted at trial, as evidenced by the trial transcript. After the prosecution had listed each of the other exhibits it sought to have admitted, it then included the tow report, as follows:
 "STATE: Exhibit 43 is an inventory list tow report from the Copley Police Station.
 "COURT: Okay. Mr. Haupt, do you have any objection to these exhibits?
 "MR. HAUPT (for Defendant): No objection, your Honor." *Page 16 
 {¶ 31} However, Defendant argues that, despite the fact that the jury was well acquainted with the contents of the tow report because of Det. Moore's testimony, and despite the fact that he expressly agreed to its admission, the business records exception to the hearsay rule, Evid.R. 803(6), should have prohibited the admission of the tow report as a police report. He objects to the admission of the tow report because, as he argues, it was offered simply to prove that there was a bottle of coolant in the passenger compartment of the truck on May 16, 2006, after some of the officers had testified that they did not see the bottle that day. However, the officer who took photographs of the truck on May 16, 2006, identified the photographs he took. Those photographs, which were admitted without objection and are not at issue now, clearly depict that bottle.
 {¶ 32} Even if Defendant were to demonstrate that the trial court erred in sending the police report to the jury, he could not demonstrate that he was prejudiced by that error. The only item on that report of any relevance to the issue of Defendant's involvement in the burglary was the coolant, which was present in the photographs taken on the day of the incident and which the jury had already seen. Defendant's second assignment is overruled.
 {¶ 33} Each of Defendant's three assignments of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed. *Page 17 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
LYNN C. SLABY
FOR THE COURT
WHITMORE, J.
DICKINSON, J.
 CONCUR *Page 1