DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jason Nelson, appeals from his conviction and sentence in the Wayne County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 4, 2004, the Wayne County Sheriff's Department received a call that Warner Pioneer Cemetery had been vandalized. Officers were dispatched to the cemetery and witnessed that numerous headstones had been broken and that several holes had been freshly dug near graves. Without any evidence of the perpetrator, the department publicized the crime and requested information from *Page 2 
the public. Shortly thereafter, deputies received a tip that indicated that a fourteen-year old girl, A.C., may have been responsible for the vandalism.
 {¶ 3} Deputies then interviewed A.C. who admitted to being present at the cemetery. A.C. also provided deputies with the names of numerous other individuals who were at the cemetery on the evening of July 3, 2004. Following this interview, deputies interviewed the others present at the cemetery on the night of the vandalism. Based upon those interviews, the deputies sought charges against Nelson. On October 22, 2004, Nelson was indicted on one count of vandalism in violation of R.C.2909.05, a fifth degree felony.
 {¶ 4} Nelson pled not guilty to the charge against him and the matter proceeded to a bench trial. At the conclusion of the evidence, the trial court found Nelson guilty of vandalism and sentenced him to nine months in prison. Nelson timely appealed his conviction, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE COURT'S FINDING OF `GUILTY' AT BENCH TRIAL ON THE SOLE COUNT OF VANDALISM, AND APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his sole assignment of error, Nelson asserts that his conviction was against the manifest weight of the evidence and was supported by insufficient evidence. This Court disagrees. *Page 3 
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained that "sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. (Emphasis omitted). Accordingly, we address Nelson's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency. *Page 4 
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 9} Nelson was convicted of vandalism in violation of R.C.2909.05(C) which provides as follows:
 "No person, without privilege to do so, shall knowingly cause serious physical harm to any tomb, monument, gravestone, or other similar structure that is used as a memorial for the dead; to any fence, railing, curb, or other property that is used to protect, enclose, or ornament any cemetery; or to a cemetery."
R.C. 2909.05(F)(2) defines "serious physical harm" as "physical harm to property that results in loss to the value of the property of five hundred dollars or more." *Page 5 
 {¶ 10} In support of his argument, Nelson asserts that the State provided insufficient evidence to prove that he caused any of the damage to the cemetery. We disagree.
 {¶ 11} The caretaker of the cemetery, David Zech, testified regarding the damage to the cemetery. Zech testified that he had last been to the cemetery on July 1 and that none of the damage existed at that time. Zech indicated that he witnessed on July 4 that roughly 23 headstones and monuments had been knocked over or damaged and that three different holes had been dug. During his testimony, Zech also stated that several of the damaged items weighed in excess of 500 pounds. At the time of trial, the cemetery had spent roughly $7,000 to repair the damaged headstones and Zech estimated that the total damage would be $14,000.
 {¶ 12} The State also presented the testimony of Chad Moore, Alita Meyer, Abigail Robinson, Matthew Fishburn, A.C., and Damon Mattison. Each of these individuals admitted to being present at the cemetery on the evening of July 3, 2004, and the early morning hours of July 4, 2004.
 {¶ 13} Chad Moore testified that he witnessed A.C. burning an American flag that had been placed at one of the graves. Moore stated that this was the only damage that he witnessed. *Page 6 
 {¶ 14} Alita Meyer testified as follows. While at the cemetery, she witnessed A.C. "kicking over tombstones." Meyer testified that she had not witnessed any other damage being done.
 {¶ 15} Both Abigail Robinson and A.C. testified that they had little memory of the night in question. Robinson stated that she was ill that night and laid in the bed of the pickup truck and did not witness any of the damage that was done. A.C. expressly denied any role in the vandalism. With respect to other questions, A.C. stated that she could not remember the events of that night clearly because she was fourteen at the time and had been upset because of a fight with her adoptive parents.
 {¶ 16} During his direct examination, Matthew Fishburn stated that he had not witnessed any of the damage being done at the cemetery. Fishburn, however, admitted that he gave a police statement on July 27, 2004, roughly three weeks after the vandalism. In that statement, Fishburn indicated that he had witnessed both A.C. and Nelson knock over gravestone markers. During cross-examination, Fishburn again stated that despite his initial statement to police, he had not personally witnessed the damage occur. During re-direct examination, Fishburn admitted that his memory was fresher at the time of his original statement than at the time of trial more than two years later.
 {¶ 17} Finally, the State called Damon Mattison. Mattison testified as follows. He was present at the cemetery on the night of the vandalism. While *Page 7 
walking around the cemetery, he noticed damage to several headstones. Mattison then asked who had caused the damage, and Nelson stated that he and A.C. had knocked over the headstones. Mattison also indicated that he and Fishburn had attempted to repair some of the damage but that the headstones were too heavy to lift.
 {¶ 18} During Mattison's cross-examination, the defense highlighted that he had been convicted of numerous felonies since the night of this event, was deliberately overdosing on cold medication on the night of the vandalism, and at the time of trial was taking prescription medication to treat schizophrenic effective disorder and borderline personality disorder. Despite this attack on Mattison's credibility, he remained adamant that Nelson had admitted to damaging the cemetery, stating that "Nelson claimed he was drunk and didn't know they were not supposed to [cause the damage]."
 {¶ 19} The individuals present at the cemetery were consistent regarding one fact. Each testified that Nelson and A.C. spent a majority of the time at the cemetery together and were alone together for a period of time.
 {¶ 20} At the close of the State's case, Nelson moved for acquittal. The motion was denied by the trial court. Nelson then indicated that he was presenting no evidence, rested his case, and renewed his motion for acquittal. The trial court again denied the motion and found Nelson guilty of vandalism. *Page 8 
 {¶ 21} Upon review of the evidence, we cannot say that the trial court lost its way in finding Nelson guilty of vandalism. Zech's testimony established that serious physical harm, damage greater than $500, had been done to the cemetery property. On appeal, Nelson has not challenged this element of vandalism. In addition, Fishburn's original statement to police indicated that he had witnessed Nelson vandalize the property. Moreover, Mattison testified that Nelson admitted to vandalizing the property. While Nelson attacked the credibility of these witnesses and their statements in some aspects, he relies on those statements in other aspects. Nearly all of those present at the cemetery indicated that A.C. played a role in the vandalism. Nelson would have this Court believe the witnesses when they implicate A.C, but then find them unreliable when they implicate him. We decline to adopt such a position.
 {¶ 22} Nelson's assertions are also undermined by the physical evidence. Roughly 23 headstones were damaged in the vandalism. Some of those headstones weighed in excess of five hundred pounds. One hole was dug one and a half feet deep and two feet square. Another hole was roughly two feet deep and two and a half feet by three feet wide. The court also heard testimony that some headstones were so heavy that two men in their twenties were unable to lift them. In reaching its decision, the trial court concluded that it was unreasonable to believe that such extensive damage could have been caused by one fourteen year *Page 9 
old girl. Based upon the above evidence, we cannot find it unreasonable for the trial court to conclude that A.C. was incapable of causing all of the damage.
 {¶ 23} Given the above physical evidence and the fact that Mattison and Fishburn both implicated Nelson, the trial court did not lose its way when it found Nelson guilty of vandalism. Nelson's conviction, therefore, was not against the manifest weight of the evidence.
 {¶ 24} Having disposed of Nelson's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra. Nelson's assignment of error is overruled.
 III. {¶ 25} Nelson's sole assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 10 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 WHITMORE, P. J. DICKINSON, J. CONCUR. *Page 1