DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant/Appellant, David Travis, appeals his conviction for rape and gross sexual imposition in the Medina County Court of Common Pleas. We affirm.
 {¶ 2} Defendant, a former police officer, was indicted on December 13, 2006, for one count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony, for conduct against A.S., aged 16 years at the time of the offense. A bench trial began and concluded on March 6, 2007, and Defendant was convicted of both counts. Defendant was sentenced to a definite *Page 2 
term of six years in prison for the rape conviction and one year in prison for the gross sexual imposition conviction, to be served concurrently.
 {¶ 3} Defendant timely appealed and raises two assignments of error.
 Assignment of Error I "The trial court denied [Defendant] his due process rights as the conviction for rape was against the manifest weight of the evidence."
 {¶ 4} Defendant asserts that his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 5} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Supreme Court of Ohio set forth the standard of review for a manifest weight challenge in a criminal case as being that set forth in State v.Thompkins (1997), 78 Ohio St.3d 380. Wilson at ¶ 25. The Wilson court held that the distinction between manifest weight and sufficiency in criminal cases "differ[s] both qualitatively and quantitatively[.]" Id. The civil standard affords more deference to the trial court and "tends to merge the concepts of weight and sufficiency." Id. at ¶ 25-26.
 {¶ 6} Because of Wilson and Thompkins, we must review a manifest weight challenge to a bench trial conviction using the standard of review applicable to all criminal cases. See, e.g., State v.Nelson, 9th Dist. No. 07CA0020, 2007-Ohio-6212, at ¶ 5-8. We do not review the record to determine whether "the trial court could reasonably conclude from substantial evidence that the State proved the offense beyond a reasonable doubt," a standard which tends to *Page 3 
merge the concepts of sufficiency and manifest weight. See, e.g.,State v. Duncan (Sept. 12, 2001), 9th Dist. No. 3117-M, at *8.
 {¶ 7} "[A] manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). Where a defendant argues that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten (1986), 33 Ohio App.3d 339, 340. "This discretionary power should be invoked only in extraordinary circumstances where the evidence presented weighs heavily in favor of the defendant." Id. at 340.
 {¶ 8} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State and convicted Defendant of both crimes.
 {¶ 9} Defendant was convicted of rape in violation of R.C.2907.02(A)(2), which states that, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined as: *Page 4 
 "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 10} Defendant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which states that:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 11} Sexual contact is defined as:
 "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 12} The jury heard the testimony of the victim, two other State witnesses, and the Defendant.
 {¶ 13} The victim, A.S., who was sixteen on the night of the incident, November 23, 2005, testified that she was in the basement of the house in which she lived with her mother, sister (Nicki), Nicki's baby, and Defendant, who was Nicki's boyfriend. A.S. explained that Defendant gave her several shots of peach schnapps within an hour and fifteen minutes, but that she was not intoxicated. A.S. testified that she believed Defendant was intoxicated. A.S. stated that, *Page 5 
without her permission, Defendant placed his hands under her shirt and bra and grabbed her breasts. A.S. explained that she did not want him to do this although she did not tell him no. Instead, A.S. explained, she got up, went upstairs and logged on to the family computer. A.S. testified that Defendant followed her upstairs and masturbated himself while lying on the couch behind her. A.S. explained that she then got up and went into the living room to watch T.V. A.S. stated that she sat on her mother's bed in the living room to watch T.V., as the living room was her mother's temporary bedroom while her mother's room was being remodeled. A.S. explained that she did not go to her room because her door did not lock and she would be trapped with Defendant.
 {¶ 14} A.S. testified that as she sat on the bed, Defendant came up in front of her, pushed her down on the bed and put one knee between her legs and the other to the side of her. A.S. stated that she tried to push her body up to shrug him off but was unsuccessful and fell backwards. A.S. indicated that Defendant then put his hands down her elastic-waisted pajama pants and underneath her underwear and put his finger in her vagina. A.S. explained that she did not want this to happen and that she told Defendant, "Don't. I can't do this to my sister." A.S. stated that Defendant then got up and went downstairs to his basement apartment after which A.S. went to her room and cried.
 {¶ 15} A.S. explained that she did not immediately tell her mother or Nicki about the incident because she was afraid she would get in trouble for drinking and *Page 6 
because she did not want to hurt Nicki, who loved Defendant. A.S. stated that the first person she told was her best friend, C.Z., a few weeks later. A.S. indicated that she told C.Z. that Defendant raped her. A.S. indicated that she told Nicki about what happened in approximately March 2006, after which Nicki ended her relationship with Defendant. A.S. later told her school counselor, who told her mother on September 22, 2006. After that, A.S. stated, she spoke with Detective Davis.
 {¶ 16} After the incident, A.S. admitted to writing letters to Defendant while he was incarcerated awaiting trial for the rape of a 12-year-old girl. A.S. admitted that with her letters, she also completed and sent surveys Defendant created, and sent pictures and other items to Defendant. A.S. indicated that she wrote these letters at Nicki's request because Nicki did not have time to write and because of a point-system that Defendant had created, that would allow A.S. to drive Defendant's Camaro automobile as a prize for writing and mailing certain things to Defendant. A.S. explained that at the time she started writing, she had not yet told Nicki about the incident, and A.S. and Nicki believed Defendant that he was innocent of the offense against the 12-year-old girl. A.S. acknowledged that she flirted with Defendant and confessed sexual fantasies to him in her letters, as well as gave him her bra and panty size. However, A.S. explained, she only did so because Defendant asked for this information and gave A.S. "points" that would allow her to drive Defendant's Camaro. A.S. admitted that her reasoning *Page 7 
was "stupid," "unbelievable," and "incredible." A.S. testified that she told Defendant in her letters that the incident was a "mistake * * * because he was cheating [on Nicki] because it was not consensual."
 {¶ 17} A.S. admitted also to writing to Defendant after he was convicted of the other incident and had been transferred to prison in September 2006. A.S. indicated that the letter she sent to Defendant was in response to a letter he wrote to her threatening to attempt to take custody of Nicki's little girl, who Defendant believed was his daughter. A.S. indicated that she told him in her letter that he would never get custody of the little girl because he was a rapist.
 {¶ 18} On cross-examination, A.S. explained that she did not initially tell Nicki about the incident, despite the fact that Nicki was then engaged to marry Defendant, because she "was afraid [she] was going to lose her" and because she did not think Nicki would believe her as Nicki did not believe the other accusation against Defendant. A.S. also admitted that there was probably something she could have done to get Defendant off of her during the rape, but she did not.
 {¶ 19} C.Z. testified that A.S. told her that Defendant raped her a few weeks after it happened. C.Z. indicated that A.S. gave her the details of what happened. C.Z.'s testimony supported that of A.S. Defense counsel did not lodge any objection during C.Z.'s testimony.
 {¶ 20} Detective Davis testified that he learned of the incident from a school counselor. He interviewed A.S., C.Z. and A.S.'s mother and prepared a *Page 8 
report, the facts of which supported A.S. and C.Z.'s testimony. The detective explained that he then went to prison to talk to Defendant. The detective testified that he told Defendant he was there to talk to him about an allegation, but did not divulge any names or details. Defendant responded that he knew the detective was there to discuss Nicki's paternity claim. When the detective told him he was there to discuss the allegation by A.S., Defendant refused to talk to the detective. The detective acknowledged that there was no physical evidence of the incident and that his report did not indicate that he ever told Defendant that he was there to talk to him about A.S.'s allegations. Defense counsel did not lodge any relevant objection to the detective's testimony.
 {¶ 21} Defendant testified that he had a brother-sister relationship with A.S. On the night in question, Defendant testified that he and A.S. were drinking in his basement apartment and that he asked A.S. to show him her breasts. Defendant stated that A.S. lifted her shirt and showed him her breasts and then went upstairs with her shirt lifted. When they were upstairs, Defendant admitted to touching A.S.'s breasts after which he went back to his apartment. Defendant indicated that A.S. never objected to his touching and that the conduct was completely consensual. In fact, Defendant asserted, A.S. indicated that she enjoyed the event in a letter to him in jail. Defendant also maintained that, in their letters to each other, he and A.S. mutually apologized for the incident because of how they could have hurt Nicki. *Page 9 
 {¶ 22} Defendant testified that the family ate Thanksgiving dinner together the next day and that everything was fine between him and A.S.. Defendant stated that he and A.S. wrote flirtatious letters to each other in prison, but that they were harmless as they both loved Nicki. Defendant's description of the letters does not contradict other testimony, except as to the last letter A.S. purportedly wrote.
 {¶ 23} Defendant indicated that A.S. had never accused him of raping her and that he first learned about her accusations in September 2006, when A.S. wrote him a letter threatening to make up charges against him if he did not stay out of her and Nicki's lives.
 {¶ 24} Defendant's letters to A.S. were admitted at trial; however, the only writing from A.S. to Defendant offered at trial was a survey that Defendant created and A.S. completed in September 2006. Defendant explained that A.S.'s letters disappeared during his transfer between jail and prison and that it was his fault that he did not have them. Defendant's letters to A.S. support A.S.'s testimony that Defendant requested the information and pictures described above and that Defendant created the point system and the prizes related thereto. Defendant's letters also reference letters written by A.S., which purportedly contained the pictures and information about which A.S. testified. Defendant acknowledged on cross-examination that it was strange, given that Defendant was a former police officer, that he would have kept A.S.'s survey, but not the letter *Page 10 
that would exonerate him. Defendant acknowledged that he did not know what happened to A.S.'s threatening letter.
 {¶ 25} On appeal, Defendant asserts that A.S.'s testimony was not credible as her behavior was inconsistent with that of someone who had been raped. Defendant further asserts that C.Z.'s testimony was inadmissible hearsay and that Detective Davis's testimony was entirely irrelevant as it did not offer any physical evidence or testimony upon which Defendant could have been convicted of either charge.
 {¶ 26} In light of the evidence at trial, "we are persuaded that the trier of fact, in this case the trial court judge, did not lose his way in considering the evidence before him. He was in the best position to weigh the credibility of the witnesses before him." State v.Peterson, 9th Dist. No. 23434, 2007-Ohio-2091, at ¶ 19, citing State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. It was not unreasonable for the trial court judge to believe A.S.'s testimony and disbelieve that of Defendant thereby concluding that Defendant had committed rape and gross sexual imposition.
 {¶ 27} As to Defendant's assertion that C.Z. and Detective Davis's testimony was inadmissible, Defendant's "[f]ailure to object to the admission of evidence at trial constitutes a waiver of all but plain error on appeal." State v. Page, 9th Dist. No. 23420, 2007-Ohio-2895, at ¶ 29, citing State v. Jones, 9th Dist. No. 22545, 2005-Ohio-5502, at ¶ 8 and State v. Frazier (1995), 73 Ohio St.3d 323, *Page 11 
332. Defendant "does not argue plain error on appeal; therefore, this Court will not address whether the admission of the evidence constituted plain error." State v. Knight, 9th Dist. No. 03CA008239, 2004-Ohio-1227, at ¶ 10, citing State v. Ramos, 9th Dist. No. 21286, 2003-Ohio-2637, at ¶ 7.
 {¶ 28} Defendant's first assignment of error is overruled.
 Assignment of Error II "[Defendant's] right to due process was denied by his trial counsel's ineffective representation during the bench trial."
 {¶ 29} In his second assignment of error, Defendant argues that he was denied the effective assistance of counsel because: (1) trial counsel failed to object to certain testimony; and (2) trial counsel elicited testimony from Defendant about prior bad acts during direct examination. We disagree.
 {¶ 30} "This [C]ourt analyzes claims of ineffective assistance of counsel under a standard of objective reasonableness." State v.Cromartie, 9th Dist. No. 06CA0107-M, 2008-Ohio-273, at ¶ 24, citingStrickland v. Washington (1984), 466 U.S. 668, 688 and State v.Bradley (1989), 42 Ohio St.3d 136, 142. Using this standard, Defendant is required to demonstrate deficiency in the performance of counsel "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" and that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]"Strickland, 466 U.S. at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. "Trial *Page 12 
strategy `must be accorded deference and cannot be examined through the distorting effect of hindsight.'" Cromartie at ¶ 24, citingState v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 115.
 {¶ 31} "A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different." Cromartie at ¶ 25, citingStrickland, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U.S. at 691. "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." Cromartie at ¶ 25, citing State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27.
 {¶ 32} As we stated in State v. Barrios, 9th Dist. No. 06CA009065,2007-Ohio-7025:
 "We have consistently held that `trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.' State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76; State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 24; State v. Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74. * * * `[T]here are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel.' State v. Diaz, 9th Dist. No. 04CA008573, 2005-Ohio-3108, at ¶ 23." Barrios at ¶ 12. *Page 13 
Thus, Defendant's assertion that he was denied the effective assistance of counsel because his attorney failed to make objections to allegedly speculative, hearsay or irrelevant testimony is without merit.
 {¶ 33} Defendant also maintains that he was denied the effective assistance of counsel when his own attorney elicited testimony about his prior rape charge. We disagree. Defendant argued at trial and on appeal that his conviction was against the weight of the evidence because A.S.'s story was not credible. Defendant asserts that A.S.'s behavior of writing to him when he was in jail, especially after he had been charged with raping another victim is not conduct consistent with that of a rape victim. This defense theory is supported by the context in which defense counsel asked the allegedly improper questions.
 "Q. After Thanksgiving of 2005 and before your conviction of the first offense, what is your relationship like with [A.S.]?
 * * *
 "Q. During your time at Medina County, did she ever accuse you of raping her?
 "A. No.
 "Q. Did she ever discuss the day before Thanksgiving with you?
 "A. Yes.
 "Q. — in those letters? Did she discuss it in a way that she accused you of rape?
 "A. No.
 "Q. After your incarceration — you were essentially convicted of rape in another case, correct? *Page 14 
 "A. Correct.
 "Q. You then went to a series of places in the prison system?
 "A. Yes.
 "Q. Did you ever receive any letters from her while you were in prison?
 "A. Yes. Two."
 {¶ 34} Even if defense counsel's questions were not intended to support a defense theory at trial, counsel's attempt to lessen the impact of evidence of defendant's prior bad acts by admitting them is considered sound trial strategy. See State v. White (1998),82 Ohio St.3d 16, 24 (holding that defense counsel's questions eliciting testimony of prior bad acts was an attempt to lessen the blow of this evidence).
 {¶ 35} Because Defendant has not established the first prong of theStrickland test, his second assignment of error is overruled.
 {¶ 36} Each of Defendant's assignments of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into *Page 15 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 WHITMORE, J. and DICKINSON, J., CONCUR. *Page 1