DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Alton Cromartie, appeals his convictions and sentences by the Medina County Court of Common Pleas. We affirm.
 {¶ 2} On January 1, 2006, Gregory J. Sulitis was assaulted in the garage and front yard of his parents' home in Brunswick, Ohio. As Mr. Sulitis walked through the attached garage, he noticed condensation on the windows of his Jeep Cherokee and that a corner of the tarp covering the cargo storage area of the vehicle was askew. Mr. Sulitis opened the door to the cargo area and found a man with a gun concealed inside. A struggle ensued, and Mr. Sulitis's mother joined the fray when she heard her son's screams. The assault continued as Mr. Sulitis *Page 2 
and the assailant moved to the front yard, where the assailant repeatedly struck Mr. Sulitis over the head with a blunt object before fleeing the scene, leaving Mr. Sulitis bloodied on the ground.
 {¶ 3} Mrs. Sulitis called 911, and the Brunswick police arrived on the scene shortly thereafter. Mr. Sulitis identified his assailant as Defendant, with whom Mr. Sulitis had been in a turbulent romantic relationship in 2005. He and Mrs. Sulitis provided a physical description of Defendant. Police recovered parts of a semiautomatic handgun in the Sulitises' yard and established a search perimeter based on the information they provided. Defendant eluded the search for approximately five hours, evading foot patrols, a canine search unit, and heat-seeking equipment as he fled on foot through the neighborhood. Brunswick police apprehended Defendant after receiving a call related to a suspected robbery at a Walgreens drug store.
 {¶ 4} Defendant was indicted on charges of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; violating a protection order in violation of R.C. 2919.27(A) and (B)(3), felonies of the fifth degree; intimidation in violation of R.C.2921.03(A) and R.C. 2921.04(B), felonies of the third degree; and retaliation in violation of R.C. 2921.05(A) and (B), felonies of the third degree. Each charge carried a firearm specification pursuant to R.C. 2941.145. *Page 3 
 {¶ 5} In anticipation of trial, the State filed notice of its intention to introduce other acts evidence consisting of testimony related to acts of actual or threatened violence perpetrated by Defendant against men with whom he had been in intimate relationships. Defendant responded in opposition and moved the trial court in limine to exclude all such evidence pursuant to Evid.R. 401, 403, and 404(B). The trial court heard arguments and denied Defendant's motion immediately prior to trial. During the course of the trial, over Defendant's objection, the State presented the testimony of David Gregory, who alleged that Defendant assaulted him in 1998, after he ended their emotionally and mentally abusive relationship; a law enforcement officer from Fort Lauderdale, Florida, who responded to the scene of the assault; and law enforcement officers from Wheaton, Illinois, where Defendant was convicted of two felonies related to his conduct toward a second former lover, Chris Cutrone.
 {¶ 6} A jury found Defendant guilty of all charges and specifications alleged in the indictment. On November 15, 2006, the trial court sentenced Defendant to prison terms for each offense, with the prison terms imposed for Counts I and II, aggravated burglary and felonious assault, to be served consecutively, and the sentences for the remaining counts to run concurrently. Defendant's cumulative prison sentence totaled nineteen years. Defendant timely appealed, raising four assignments of error.
 ASSIGNMENT OF ERROR I *Page 4 "The trial court erred when, over defense objections, it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B), and [Defendant's] rights under Article I, Section 16
of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 7} In his first assignment of error, Defendant maintains that the trial court erred by permitting the State to introduce evidence related to other acts perpetrated against David Gregory and Chris Cutrone because, he argues, this evidence does not fall into one of the exceptions set forth in Evid.R. 404(B) for the admission of other acts evidence. He challenges the testimony of David Gregory and Fort Lauderdale Police Officer Michael Lilly on the additional grounds that it is too remote in time to constitute other acts evidence and that Defendant was acquitted of charges resulting from an attack on Mr. Gregory. In the alternative, Defendant maintains that even if the testimony relating to Mr. Gregory and Mr. Cutrone was permitted by Evid.R. 404(B), the trial court erred by failing to exclude it as unduly prejudicial to Defendant.
 {¶ 8} Trial courts possess broad discretion in determining the admissibility of evidence. State v. Maurer (1984), 15 Ohio St.3d 239,265, citing State v. Hymore (1967), 9 Ohio St.2d 122, 128. As such, this court will not overturn a trial court's evidentiary determination in the absence of an abuse of discretion that resulted in material prejudice to the defendant. State v. Ristich, 9th Dist. No. 21701, 2004-Ohio-3086, at ¶ 9. Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable — not *Page 5 
merely an error of law or judgment. See State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 9} Evidence of other acts is not admissible to prove a propensity toward criminal conduct, but may be offered for one or more of the purposes set forth in Evid.R. 404(B), "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Acts tending to demonstrate a unique plan or pattern of conduct are admissible to prove identity of the perpetrator or for any of the purposes set forth in Evid.R. 404(B). State v.Jamison (1990), 49 Ohio St.3d 182, syllabus. In this case, the evidence of other acts committed by Defendant is relevant to both identity and motive. This evidence tends to demonstrate a distinctive, peculiar pattern or scheme of conduct by Defendant in similar circumstances to the facts of this case.
 {¶ 10} Mr. Sulitis testified that he met Defendant through an on-line dating service and that the two became romantically involved shortly thereafter. He recalled that for a brief period of time, their relationship appeared to be "decent," but that Defendant soon demonstrated that he wanted more from the relationship than did Mr. Sulitis. Mr. Sulitis testified that Defendant engaged in an escalating pattern of intimidation, coercion, and manipulation via electronic mail and text messaging. He further testified that Defendant would not accept his desire to end the relationship, but continued to contact him even after he changed his cellular phone number and moved from his residence. Mr. Sulitis recounted incidents of *Page 6 
physical violence and destruction of his property by Defendant. He recalled that he was fearful of Defendant to the extent that he was willing to do anything in order to end their involvement and characterized Defendant as "in complete control."
 {¶ 11} Prior to his relocation to Brunswick on December 19, 2005, Mr. Sulitis obtained a protection order against Defendant in Cook County, Illinois. Mr. Sulitis testified that Defendant was enraged by the protection order and engaged in a series of intimidating communications that culminated in electronic mail messages and greeting cards that threatened retaliation against Mr. Sulitis's immediate family. Mr. Sulitis testified that during the same time period, however, Defendant obtained a similar order against him based on allegations which, Mr. Sulitis explained, were false.
 {¶ 12} Mr. Sulitis testified that on the evening of January 1, 2006, Defendant concealed himself in the cargo area of Mr. Sulitis's Jeep Cherokee and attacked him as he opened the cargo door. A rental car containing Defendant's wallet and documents belonging to Mr. Sulitis — which had been left inside his parents' residence — was left on the street near the scene of the attack. Police identified marks on window and doorframes of the residence indicating an attempt at forced entry, and those marks were consistent with a screwdriver found at the scene. Soon after the attack, a screen in Mr. Sulitis's bedroom was found to have been cut from the window frame in such a way that the damage was only visible *Page 7 
upon close inspection. Defendant, on the other hand, testified that Mr. Sulitis attacked him rather than the other way around and that his health was too poor for him to have committed the acts in question and to have eluded police on foot for several hours.
 {¶ 13} The Florida and Illinois incidents involving David Gregory and Chris Cutrone illustrated peculiarly similar patterns of conduct. Evidence demonstrated that both men were involved in intimate relationships with Defendant that progressed to levels of intimidation and physical violence. Mr. Gregory testified that Defendant threatened him with a gun. He recalled another occasion on which Defendant hid in the trunk of his car and crawled out, brandishing a screwdriver, while Mr. Gregory was driving home from a social engagement. Mr. Gregory testified that Defendant inundated him with letters, electronic pages, and calls to his workplace; that he feigned illness in order to gain access to Mr. Gregory at his place of employment; and that he destroyed Mr. Gregory's personal property. Mr. Gregory obtained a protection order against Defendant, while Defendant twice made false allegations against Mr. Gregory that led to his arrest. Mr. Gregory changed his name and moved to another state, only to be located by Defendant there. Ultimately, according to Mr. Gregory, Defendant obtained his address by breaking into the home of a mutual acquaintance and gained access to his apartment by climbing into the attic through an access panel in the common laundry room. Mr. Gregory testified that on March *Page 8 
17, 1998, Defendant hid in his apartment and attacked him with a large butcher knife as law enforcement officers left the residence after escorting Mr. Gregory home. Officer Michael Lilly, who was at the scene of the attack, testified confirming these details.
 {¶ 14} Wheaton, Illinois police officers Wayne Loster and Andrew Uhlir testified regarding Defendant's relationship with Chris Cutrone during 2002-2003. Like Mr. Sulitis and Mr. Gregory, Mr. Cutrone became involved in a romantic relationship with Defendant that became violent and threatening. According to Detective Loster, Mr. Cutrone reported to the Wheaton police department incidents of trespass, threats by telephone and electronic mail, criminal damage, and stalking. During Det. Loster's involvement in the case, Mr. Cutrone reported that Defendant damaged his automobile, attempted a break-in of Mr. Cutrone's residence, engaged in counter-surveillance of police, and used a rental car to cruise Mr. Cutrone's neighborhood. When police executed a search warrant of Defendant's then-residence, Defendant concealed himself in the trunk of an automobile. Det. Loster also testified that Defendant lodged false complaints against Mr. Cutrone alleging stalking behaviors and complained of illness following his arrest.
 {¶ 15} The other acts evidence in this case characterizes Defendant's persistent, threatening, and frequently violent reaction to rejection by his love interests. It demonstrates technological savvy, use of tools and weapons, *Page 9 
destruction of physical property, false criminal allegations, and complaints about Defendant's own allegedly ill health, as well as repeated use of rental vehicles and the notably peculiar practice of hiding in the cargo areas of automobiles. This "idiosyncratic pattern of conduct" is sufficient to be probative in this case, and the trial court did not err by determining that Evid.R. 404(B) permitted the testimony at issue. See State v. DePina (1984), 21 Ohio App.3d 91, 92.
 {¶ 16} This result is not changed by the proximity of the events at issue in the other acts testimony to the evidence in this case. "[Although `other acts evidence aimed at showing an idiosyncratic pattern of conduct should not be so remote from the offense charged as to render them non-probative, logic does not require that they necessarily be near the offense at issue in both place and time. * * * The key to the probative value of such conduct lies in its peculiar character rather than its proximity to the event at issue.'" State v.Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶ 46, quotingDePina (1984), 21 Ohio App.3d at 92. See, also, State v. Piddle, 9th Dist. No. 23287, 2007-Ohio-1820, at ¶ 54-59. Given the specific peculiarities demonstrated by the other acts evidence in this case and the timeframe at issue, we conclude that the Gregory and Cutrone incidents are not so remote in time, when considered as a sequence and pattern of conduct, as to render them nonprobative.
 {¶ 17} Neither does the fact that Defendant was acquitted of charges related to the assault on David Gregory change this result. Other acts evidence must be *Page 10 
proved by "substantial proof." Jamison, 49 Ohio St.3d at syllabus. For purposes of establishing other acts evidence, proof beyond a reasonable doubt is not required, and the fact that a jury may have acquitted the defendant of criminal charges arising from those acts does not render it inadmissible. Craig at ¶ 52, citing Dow ling v. United States (1990),493 U.S. 342, 349-350.
 {¶ 18} Defendant also argues that the trial court erred by failing to exclude the evidence pursuant to Evid.R. 403(A), which provides that otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The trial court, however, has broad discretion to determine whether relevant evidence must be excluded in accordance with Evid.R. 403(A) because "the exclusion ofrelevant evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." (Emphasis in original.) State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 40. There is no indication that the trial court abused its discretion in this case.
 {¶ 19} The trial court properly determined that the other acts evidence adduced by the State was admissible for the purposes set forth in Evid.R. 404(B). Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court deprived [Defendant] of his Sixth and Fourteenth Amendment right to self-representation." *Page 11 
 {¶ 20} In his second assignment of error, Defendant argues that by refusing his second request during trial to represent himself, the trial court denied him his right to self-representation. We disagree.
 {¶ 21} Criminal defendants enjoy the constitutional right to self-representation at trial provided that the right to counsel is knowingly, voluntarily, and intelligently waived after sufficient inquiry by the trial court. State v. Johnson, 112 Ohio St.3d 210,2006-Ohio-6404, at ¶ 89. Assertion of the right to self-representation must be clear and unequivocal. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 107, citing United States v. Frazier-El (C.A.4 2000), 204 F.3d 553, 558. It must also be timely made, and self-representation may be properly denied when requested in close proximity to trial or under circumstances indicating that the request is made for purposes of delay or manipulation. State v. Vrabel,99 Ohio St.3d 184, 2003-Ohio-3193, at ¶ 50; Frazier-El, 204 F.3d at 559. When a defendant's vacillation on assertion of the right creates ambiguity, self-representation may be denied:
 "The requirement that a request for self-representation be clear and unequivocal also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation. A defendant who vacillates at trial places the trial court in a difficult position because it `must "traverse . . . a thin line" between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation.' In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a `constitutional primacy' to the right to counsel because this right serves both the *Page 12 
individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.
 "At bottom, the * * * right to self-representation is not absolute, and `the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'" (Internal citations omitted.) Frazier-El, 204 F.3d at 559.
See, also, Vrabel, 2003-Ohio-3193, at ¶ 49-53 (holding that a defendant who vacillated between assertion of the right to self-representation and representation by counsel and who finally asserted the right to self-representation on the day that presentation of the State's case-in-chief was scheduled to begin did not properly invoke the right.)
 {¶ 22} As described in Frazier-El and Vrabel, the record in this case indicates that Defendant vacillated on the issue of self-representation after trial began. He asserted the right to self-representation on the first day of trial after the jury was impaneled. The trial court conducted a thorough colloquy with Defendant, granted the request, and appointed standby counsel. During the direct examination of the third witness called by the State, after the trial court admonished Defendant and standby counsel to avoid hybrid representation, Defendant asserted his right to counsel. Defendant requested self-representation again during the State's direct examination of Mr. Sulitis. At that point, the trial court denied Defendant's request:
 "I am not going to permit [Defendant] to proceed by himself. He has an attorney. We're now into the third day of trial, and I'm going *Page 13 
to require that counsel continue in his retained role as counsel for [Defendant]. And here's the reason why.
 "* * * What is a right of this Defendant can't be used as a bludgeon to make trial impossible. And trial in this case has become nearly impossible, as a practical matter, based on what's happened here.
 "And to review again, after the first round of lawyers had been hired and dismissed on the eve of trial, we had a situation in which [Defendant] became unhappy with this counsel, dismissed his counsel, decided he wanted counsel again, became unhappy with the same attorney, dismissed the attorney, decided he wanted to proceed with that attorney again, and now he wants to dismiss that same attorney. This is all within four days of this case.
 "* * * [W]hat I'm struggling with is what I believe is strategy on the part of the Defendant to make this trial impossible."
 {¶ 23} We agree with the trial court that vacillation and manipulation by a defendant may transform assertion of a right into "a bludgeon used to make trial impossible." This, combined with the untimely assertion of the right to self-representation well into the trial, indicates that the right was not properly invoked. Under these circumstances, the trial court did not err in ascribing "constitutional primacy" to Defendant's right to counsel and in denying his request to proceed pro se. SeeFrazier-El, 204 F.3d at 559. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "[Defendant] was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 24} This court analyzes claims of ineffective assistance of counsel under a standard of objective reasonableness. See Strickland v.Washington (1984), *Page 14 466 U.S. 668, 688; State v. Bradley (1989), 42 Ohio St.3d 136, 142. Under this standard, a defendant must show deficiency in the performance of counsel "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" and that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" Strickland, 466 U.S. at 687. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." State v. Conway,109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 115.
 {¶ 25} A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. Strickland, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27.
 {¶ 26} Defendant cites numerous instances of conduct which, in his view, demonstrate the deficient performance of trial counsel. A number of these relate to counsel's alleged failure to "properly preserve objections and errors." In this *Page 15 
regard, we note that the decision not to raise objections at trial is a strategic choice. Conway, 2006-Ohio-2815, at ¶ 103. See, also, State v.Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. "Competent counsel might well hesitate before objecting to testimony in the presence of the jury because objections might be considered bothersome by the jury or disrupt the flow of the trial." State v. Daniels, 9th Dist. No. 03CA008261, 2004-Ohio-828, at ¶ 28, citing State v.Campbell (1994), 69 Ohio St.3d 38, 53, certiorari denied (1994),513 U.S. 913. This is particularly true where, as here, the presentation of evidence was lengthy and at times disjointed.
 {¶ 27} Having reviewed the substantial record in this case, we cannot conclude that trial counsel's performance fell below a standard of objective reasonableness. To the contrary, it is apparent that trial counsel represented Defendant with commendable skill in a trial that involved technical and scientific evidence, numerous witnesses, and over one hundred exhibits. Even if we were to assume that trial counsel's performance fell below this standard, Defendant has failed to demonstrate how the result of the trial would have been different in the absence of such conduct. Our review of the record leads us to conclude that it would not, and Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "State misconduct during [Defendant's] trial denied his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." *Page 16 
 {¶ 28} In his final assignment of error, Defendant argues that the State made improper remarks during cross-examination of Defendant and closing argument that denied him a fair trial. We disagree.
 {¶ 29} With respect to comments made during cross-examination and closing arguments, the test for prosecutorial misconduct is twofold: whether the comments were actually improper and, if so, whether they prejudiced substantial rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14; State v. Mason (1998), 82 Ohio St.3d 144, 161. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial."State v. Apanovitch (1987), 33 Ohio St.3d 19, 24, citing State v.Maurer (1984), 15 Ohio St.3d 239, 266. Cross-examination may properly include all relevant matters and those related to the credibility of the witness. State v. Slagle (1992), 65 Ohio St.3d 597, 605; State v.Wade, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 47. During closing argument the State may comment on all evidence adduced at trial and the reasonable inferences that may be drawn from the evidence. State v.Lott (1990), 51 Ohio St.3d 160, 165.
 Cross-Examination {¶ 30} Defendant first argues that the State improperly questioned him about an incident in which a vehicle owned by David Gregory's mother was set ablaze. Defendant maintains that he suffered prejudice regardless of the fact that the prosecuting attorney abandoned the line of questioning when instructed to do *Page 17 
so by the trial court. Defendant assumes that because the question was asked by the county prosecuting attorney himself, the jury must have received the impression that the allegation was true. We disagree.
 {¶ 31} Evidence of other acts with respect to David Gregory was properly admitted pursuant to Evid.R. 403 and 404(B). The State's question on cross-examination related to specific, peculiar details of Defendant's conduct that could identify his motive and confirm his identity as the perpetrator in this case. Even assuming that this line of questioning was improper, Defendant has not demonstrated that his substantial rights were affected. We reject Defendant's assertion that we must assume that the jury abandoned its function and leant credibility to every assertion made by the State because the county prosecuting attorney conducted his cross-examination.
 {¶ 32} Defendant also maintains that the State improperly commented on his credibility and asked inappropriate and irrelevant questions about alleged misconduct while Defendant was incarcerated awaiting trial. Defendant did not object to these statements and, therefore, has forfeited all but plain error on appeal. See State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 22-23. "By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' *Page 18 
defect in the trial proceedings. Third, the error must have affected * * * the outcome of the trial." State v. Barnes (2002), 94 Ohio St.3d 21, 27. This court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. See State v. Long (1978),53 Ohio St.2d 91, 97.
 {¶ 33} Defendant argues that the State improperly commented on his credibility in the following exchange:
 "Q: Did you tell — isn't it a fact you did not tell Officer Rightnour or Officer Jones or Det. Papushak that you met Greg Sulitis and he was outside with a metal detector?
 "A: I told Det. Papushak —
 "Q: Yes or no.
 "A: — that Greg Sulitis had possession of the rental car, and he talked about DNA.
 "Q: Greg talked about DNA?
 "A: No. Det. Papushak.
 "Q: Okay. Well, you heard Det. Papushak testify, your lawyer had full access to a summary, and you didn't hear that from Det. Papushak, did you?
 "A: I don't recall hearing that.
 "Q: You didn't tell Det. Papushak —
 "A: I didn't — Det. Papushak —
 "Q: Excuse me.
 "A: — didn't testify to everything —
 "Q: Can you answer the question?
 "A: — that I said." *Page 19 
 "Q: I know you've got a story to tell the Jury, but there's no question —
 "THE COURT: All right. Mr. Holman, stop. Ask a question, please. And, Mr. Cromartie, you need to answer the questions and stop going back and forth with Mr. Holman.
 "THE WITNESS: Well, your Honor —
 "THE COURT: Stop. Go ahead, Mr. Holman. Ask your next question."
This exchange occurred near the end of Defendant's cross-examination, throughout which Defendant's testimony was evasive and nonresponsive, at best. Shortly after this exchange, the trial court intervened in the cross-examination in an attempt to direct Defendant to answer the questions posed by the State. Viewed in this context, the statement by the prosecuting attorney reflects not a comment on Defendant's credibility, but an expression of frustration in response to Defendant's conduct on the stand. There is no error with respect to this statement.
 {¶ 34} Defendant's last argument with respect to his cross-examination is that the prosecuting attorney asked whether Defendant "hoarded" prescription medications while in jail awaiting trial.[1] Once again, it is helpful to place this exchange in the context of the entire trial and particularly within the State's cross-examination of Defendant. As noted above, Defendant maintained at trial that he was physically frail; that he was the victim in an attack by Mr. Sulitis; and that he *Page 20 
could not have fled from police in the manner described in their testimony. Other witnesses, however, identified Defendant and testified that he showed no physical limitations at the time of the attack. In identifying Defendant, the witnesses noted that his physical appearance was dramatically changed at trial.
 {¶ 35} Defendant's physician, Dr. Patrick Sziraky, testified that Defendant suffers from degenerative arthritis of the hip caused by a condition known as avascular necrosis and from severe cardiomyopathy, "a disease of the heart muscle that limits the heart's ability to function properly[.]" Dr. Sziraky stated that Defendant's mobility is limited by his physical condition. On cross-examination, the State questioned the extent to which Defendant is physically impaired and Defendant's honesty in providing Dr. Sziraky with an accurate medical history. The State then questioned Defendant about his failure to take medications prescribed by the jail's medical staff. In this context the State's line of questioning properly addressed Defendant's truthfulness with respect to his physical condition by implying that his failure to take prescription medications indicated that he feigned physical illness. There was no error in further cross-examining the Defendant regarding his relationship with physicians who were treating him during his incarceration, including his use or non-use of the medications they prescribed. There is no plain error with respect to this line of questioning.
 Closing Argument *Page 21 {¶ 36} Defendant also alleges three instances of misconduct by the State during closing argument. Because Defendant did not object to these statements at trial, he has forfeited all but plain error on appeal. SeePayne, 2007-Ohio-4642, at ¶ 22-23. His first argument is that the State urged the jury to consider other acts evidence for an impermissible purpose. According to Defendant, "what the state was really clearly arguing was that if [Defendant] did it before, he did it here." As set forth in our disposition of Defendant's first assignment of error, however, the other acts evidence produced by the State was properly admitted. During closing, the State made fair comment on this evidence, and there was no error with respect to these comments.
 {¶ 37} Defendant also argues that the State improperly and "without the slightest evidence" argued that Defendant attempted to enter another home in the Sulitis's neighborhood on an evening prior to the attack. During the direct examination of Brunswick Police Officer Jonathan Page, however, the State produced testimony that police observed a vehicle in the neighborhood at the time of the earlier attempted break-in that was consistent with the description of Defendant's rental car found on the day of the attack. Counsel for Defendant cross-examined Officer Page on this point and argued in his own closing that this testimony should be discredited:
 "Now, [the State] brought up the witness that we all met — Gayle Marciell — on 12/30. And you recall Sgt. Page's testimony. He called it a prowler call, and he went out to that call and noticed a vehicle. He thought it was a Dodge Intrepid, he wasn't sure. He *Page 22 
found no substance to the call, he told Miss Marciell that, and he was so concerned about this vehicle that he didn't note the make and model and he didn't write the best identifying characteristic — the license plate — down. * * *
 "But [the State] tells us, `Well, then that must mean that that was [Defendant] trying to get into a home on a different street at a different address,' even though [Defendant] is, you know, supposedly sending items here and different items to the home and he's writing directions and knows the address and has spent all of this time calculating all of these things. Folks, it can't be both ways. [Defendant] now happens to be, on the 30th, on a different street at a different home, in an investigation that Sgt. Page thought was so important he didn't even write a report at all."
The statements made by the State and counsel for Defendant were both fair — albeit opposing — comments on Sgt. Page's testimony. There is no error in this regard.
 {¶ 38} Finally, Defendant argues that the State made "a subtle comment or complaint * * * regarding constitutional protections afforded to defendants" during closing. Defendant directs this court to the following statement made in rebuttal:
 "And [defense counsel] made a comment in his closing argument, something about the lifestyle, I don't recall the exact words. But, Ladies and Gentlemen, regardless of the lifestyle that a person has, they're entitled to the protection of our laws, Ohio laws, just like [Defendant] has had protection of Ohio laws, Constitutional protections, due process, to cross-examine witnesses, subpoena witnesses, confront witnesses, his right to counsel; he's been accorded all those protections. And Greg Sulitis is entitled to protection of the laws, too. So when he made that comment about how people act, people act in strange ways, well, people in all relationships make wrong decisions, but that doesn't entitle the other party to take a weapon and beat them in the head." *Page 23 
Defendant mischaracterizes the State's words. Viewed in context, it is apparent that the State did not complain about the constitutional rights afforded to a defendant, but argued that both Defendant and Mr. Sulitis were entitled to the protection of law regardless of their homosexual lifestyle. There was no error with respect to this statement. Defendant's fourth assignment of error is overruled.
 {¶ 39} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 24 
Costs taxed to Appellant.
LYNN C. SLABY FOR THE COURT
MOORE, P. J. DICKINSON, J. CONCUR
[1] Defendant objected to this line of questioning, but only on the basis that the defense intended to provide documents regarding the subject matter of the State's questions. *Page 1