DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Ivan Barrios ("Barrios"), appeals from the decision of the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} Sometime during the summer of 2004, Michelle Mauricio-Deleva ("Mauricio"), the victim in the instant case, moved in with Jennifer Walker ("Walker"). Mauricio was 17 years old at the time. Soon after Mauricio moved in, Walker met and began dating Barrios. By December of 2004, Barrios had moved in with Walker and Mauricio. In early February of 2005, Barrios and Mauricio were both at the home while Walker was out. Mauricio testified that at *Page 2 
some point that morning, Barrios came into her room and grabbed her. When she attempted to push him away, he pulled her down and got on top of her. Mauricio stated that he moved her shorts to the side and performed oral sex on her. She testified that she told him to stop. He then removed his pants and proceeded to have sexual intercourse with her. According to Mauricio, Barrios stopped only when he thought he heard someone coming up the stairs. He told her not to say anything about what had happened and then left the room.
 {¶ 3} After the assault, Mauricio stayed with friends for several days. She eventually told her friend, Melissa Roman, that something bad had happened to her. Mauricio eventually went back to Walker's home because she felt she had nowhere else to go. She did not report the assault to the police. At the end of February, Walker informed Mauricio that Barrios had taken advantage of her. In turn, Mauricio informed Walker that Barrios had done the same thing to her. Walker notified the police.
 {¶ 4} Initially, Walker called the police because she claimed Barrios had stolen money from her. When Officer Torres arrived, however, she informed him that Barrios had raped her. She then told Officer Torres that Barrios had also raped Mauricio. Officer Torres then met with Mauricio. Detective Kovach attempted to follow up with Walker's allegation of rape, but when his efforts to contact her failed, he did not go forward with a rape complaint against Barrios with Walker as the victim. Detective Kovach met with Mauricio and on June 16, *Page 3 
2005, Barrios was indicted by the Lorain County Grand Jury for one count of rape with Mauricio as the victim, in violation of R.C. 2907.02(A)(2). He pled not guilty to the charge, and on October 19, 2006, a jury trial commenced. On October 20, 2006, the jury found Barrios guilty of rape. On October 30, 2006, he was sentenced to four years incarceration and labeled a sexually oriented offender. Barrios timely appealed from his conviction, raising four assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT ALLOWING DEFENSE COUNSEL TO ELICIT TESTIMONY FROM A DEFENSE WITNESS TO SHOW BIAS OF THE ALLEGED VICTIM."
 {¶ 5} In his first assignment of error, Barrios argues that the trial court committed prejudicial error by not allowing defense counsel to elicit testimony from a defense witness to show bias of the alleged victim. We do not agree.
 {¶ 6} Barrios specifically contends that the trial court erred when it did not permit a line of questioning which he alleges would have elicited evidence of Mauricio's consensual sexual relationship with him and the conspiracy to fabricate the rape accusation. According to Barrios, this evidence would show that Mauricio had a motive to lie.
 {¶ 7} The admission or exclusion of relevant evidence is within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph *Page 4 
two of the syllabus. Furthermore, whether the probative value of evidence is substantially outweighed by any prejudice to a party is also a matter left to the sound discretion of the trial court. State v.Iacona (Mar. 15, 2000), 9th Dist. No. 2891-M, at *20, citing State v.Allen (1995), 73 Ohio St.3d 626, 633. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. This Court will not reverse an evidentiary ruling unless the trial court has abused its discretion and a party has suffered material prejudice from that ruling.Weiner, Orkin, Abbate Suit Co., L.P.A. v. Nutter (1992),84 Ohio App.3d 582, 589.
 {¶ 8} We first note that the testimony Barrios attempted to elicit was offered on direct examination of his own witness. It is a fundamental rule of evidence that error cannot be based on a ruling which excludes evidence unless a substantial right of the party is affected, and "the substance of the evidence was made known to the court by offer or was apparent from the context[.]" Evid.R. 103(A)(2). An offer of proof is unnecessary if the evidence is excluded on cross-examination. Id. Consequently, we cannot rule on the merits of Barrios' first assignment of error until we can first determine that he has properly preserved the issue on appeal. The Ohio Supreme Court has explained that "Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the excluded evidence is apparent in the record." State v. Brooks (1989), *Page 5 44 Ohio St.3d 185, 195. In the instant case, the transcript reveals that Barrios "failed to proffer to the trial court what the desired testimony of [Walker] was and how it would have been relevant and material to the defense." Id. Accordingly, Barrios has failed to preserve this issue for appeal. Therefore, Barrios' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO PREJUDICIAL EVIDENCE OF PRIOR BAD ACTS AND EVIDENCE ELICITED IN VIOLATION OF THE RAPE SHIELD STATUTE."
 {¶ 9} In his second assignment of error, Barrios contends that his trial counsel was ineffective for failing to object to prejudicial evidence of prior bad acts and evidence elicited in violation of the rape shield law. We do not agree.
 {¶ 10} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v.Richardson (1970), 397 U.S. 759, 771, at fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This *Page 6 
requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 11} Barrios argues that he was prejudiced due to his counsel's failure to object to testimony of Mauricio, Officer Torres, and Detective Kovach regarding Walker's rape allegation. He contends that this testimony violate Ohio's Rape Shield Statute. We do not agree.
 {¶ 12} We have consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76; State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 24; State v. Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74. Barrios' argument that "[f]ailing to object to this evidence was unrelated to any legitimate trial strategy[,]" falls short of satisfying his burden of proof that his counsel's failure to object was so serious as to deprive him of a fair trial. Again, we note that "[t]here are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel." State v. Diaz, 9th Dist. No. 04CA008573, 2005-Ohio-3108, at ¶ 23. Even if we question trial counsel's strategic decisions, we must defer to his judgment. State v. Clayton (1980), 62 Ohio St.2d 45, 49. The Ohio Supreme Court has stated that
 "`[w]e deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of *Page 7 
available practices in the defense field.' * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id. quoting State v. Lytle, 48 Ohio St.2d 391, 396.
 {¶ 13} In the instant case, it is clear that Barrios' strategy was to show that Walker and Mauricio conspired to fabricate the rape allegations. During his opening statement, Barrios' counsel explained to the jury his theory of the case, stating:
 "We have a woman that felt betrayed by her friend, [Mauricio], and by her boyfriend, [Barrios]. So she decided, you know what, I'm going to get back to (sic) him. [Mauricio], this is what we're going to do because we have to get back at him. [Walker] was the one that called the police. [Mauricio] never called the police before. Ever. So she said, `This is what we're going to do. We're going to report it, and we're going to get back to him. He needs to learn. He did that to you, he did that to me. He betrayed me."
 {¶ 14} It is clear that counsel was attempting to show that because Walker fabricated her rape allegation, Mauricio did as well. Instead of objecting during the State's presentation of evidence, Barrios' counsel elected to undermine the rape allegation during his case-in-chief by presenting proof of a conspiracy.
 {¶ 15} Finally, assuming we were to agree with Barrios that this was unrelated to any trial strategy, Barrios has failed to demonstrate that because of this failure, the result of his trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 142. There is nothing in the record that suggests, nor does Barrios argue, that the disputed statements made Mauricio's testimony about the sexual assault any less believable. *Page 8 
 {¶ 16} Accordingly, Barrios' second assignment of error is without merit.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT DENIED [BARRIOS] DUE PROCESS OF LAW AND HIS SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE BY EXCLUDING DEFENSE WITNESSES."
 {¶ 17} In his third assignment of error, Barrios argues that the trial court denied him due process of law and his Sixth Amendment right to present a defense by excluding his witnesses. We do not agree.
 {¶ 18} We recognize that "a criminal defendant enjoys the right-as embodied in the Sixth Amendment to the United States Constitution — to offer testimony of witnesses on his behalf." State v. Moon (1991),74 Ohio App.3d 162, 169, citing Washington v. Texas (1967), 388 U.S. 14,18-19. However, a trial judge may exclude evidence when "the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses." Moon, 74 Ohio App.3d at 169. This serves the purpose of the discovery rules which "`is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial.'" State v. Blough (Apr. 7, 1999), 9th Dist. No. 19143, at *2, quoting Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 3. Crim.R. 16 grants the trial court discretion to determine sanctions for violation of the discovery rules. Exclusion is a permissible sanction "as long as it would not completely deny the defendant his constitutional right to present a defense." State *Page 9 v. Sinkfield (Nov. 30, 2001), 2d Dist. No. 18663, at *8. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} In the instant case, Barrios was indicted on June 16, 2005. On September 27, 2005, the trial court ordered the State to provide discovery and a bill of particulars to Barrios on or before October 11, 2005. Further, the court ordered Barrios to provide the State with discovery on or before October 24, 2005, and set the deadline for all motions on or before October 31, 2005. The record indicates that the State responded to Barrios' discovery request on October 13, 2005. The State supplemented this response on May 31, 2006. The trial, originally scheduled for April 25, 2006, was rescheduled for June 13, 2006, then upon Barrio's counsel's motion, it was rescheduled to August 24, 2006. The trial was again rescheduled to October 19, 2006. On October 16, 2006, Barrios filed his notice of witnesses to be called at trial. The notice included eight witnesses. We note that the certificate of service on this document indicates that it was mailed at some point in August; however, the date is left blank. Further, the witness subpoenas indicate that they were served on October 16, 2006. According to the transcript, as of the morning of trial, the State had not yet received Barrios' notice of witnesses. The State moved to exclude these witnesses and a discussion was held on the record. The State argued that the first indication it had of any *Page 10 
intended witnesses was during a plea discussion with defense counsel the morning of trial. The State did not object to Walker's testimony because she was on its list as a potential witness.
 {¶ 20} Barrios' counsel explained that she had previously informed the State of the possibility of having witnesses; "however, I did not have the opportunity to interview them and know what type of testimony they were going to give." She then went on to explain that the witnesses were going to testify as to the "credibility of what had happened. One of them were present at the time of the incident, and the other ones have been in the house and witnessed their behavior and interaction with each other." She did not, however, attempt to explain why these witnesses were not discovered until nearly a year after the discovery deadline. Nor did she suggest, "by means of a proffer or otherwise, that [the witnesses] could add anything to the proceedings that the other defense witnesses were unable to supply." Moon, 74 Ohio App.3d at 170. As Barrios was able to present the testimony of Walker, we cannot find that the trial court abused its discretion. The exclusion of the last minute witnesses did not completely deny him the right to present a defense. Accordingly, Barrios'"constitutional rights were not infringed by the trial court's refusal to accept the surprise witnesses]." Id., citingState v. Harcourt (1988), 46 Ohio App.3d 52, 54-55. Barrios' third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV *Page 11 "THE VERDICT OF THE JURY FINDING [BARRIOS] GUILTY OF RAPE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [BARRIOS'] RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 21} In his fourth assignment of error, Barrios contends that the verdict of the jury finding him guilty of rape was against the manifest weight of the evidence. We do not agree.
 {¶ 22} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J. concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 23} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the *Page 12 
basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Otten, 33 Ohio App.3d at 340.
 {¶ 24} The jury convicted Barrios of rape, in violation of R.C.2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines sexual conduct as follows:
 "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse * * * between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 25} The jury heard testimony from five witnesses. The State presented evidence from Mauricio, her friend Melissa Roman ("Roman"), Officer Torres, and Detective Christopher Kovach ("Kovach"). Barrios presented evidence from Walker.
 {¶ 26} Mauricio testified that on February 1st or 2nd of 2005, she was at home. Barrios was downstairs with two friends. She explained the details that led up to the rape. She stated that Barrios came into her room and approached her *Page 13 
bed, where she was sitting. He grabbed her leg twice. He then pulled her towards the edge of the bed and pushed her shorts to the side. As he attempted to perform oral sex on her, she first tried to push his head then tried to push him off her. After approximately a minute or two, he attempted to kiss her two or three times. She testified that she tried to look away and told him to stop. Mauricio stated that "[h]e proceeded to unbuckle his pants and insert his penis into my vagina." According to Mauricio, this lasted for approximately 30 seconds. She further testified that while he was on top of her she tried to push him away. She stated that he heard someone coming up from the stairs, which prompted him to suddenly stop, get up, and leave the room. As he was leaving, he told Mauricio not to say anything about what had happened. After Barrios left the room, Mauricio attempted to call a friend to come pick her up. She did not leave the home until several hours later. She testified that she stayed with friends for several days. Mauricio stated that she told her friend, Roman, about what had happened to her, but that she did not call the police. When asked why she did not inform the police, Mauricio explained that "I didn't want this to happen. I didn't want to have to think about it more than I had to like this. Take two years, court date after court date, and every time it comes up, I always had to think about it. I didn't want to." Mauricio testified that at the end of February, Walker called her and told her that Barrios had done the same thing to her. At that point, Mauricio told Walker that Barrios had raped her. According to Mauricio, after this phone call, "[s]he said *Page 14 
she was calling the police, and I said okay. So I went over to [the] apartment because I wasn't there at the time. I went over there, and the police were there, and they took down my story and they talked to her." She also testified that before the rape occurred, she and Walker had had problems living together.
 {¶ 27} Roman testified that Mauricio had stayed with her for a few days in February and had informed her that something bad had happened to her. Officer Torres testified that he responded to a call to assist a female in getting property and a possible domestic issue. When he arrived at the residence, he met with Walker. He testified that Walker informed him that Barrios had taken money from her. Upon entering the house, Walker then informed Officer Torres that Barrios had raped her the night before. Officer Torres testified that Walker indicated that Mauricio had also been raped. Mauricio arrived at the home while Officer Torres was there and confirmed that Barrios had raped her.
 {¶ 28} Kovach testified that the original report generated by Officer Torres was forwarded to him for a follow-up investigation. Kovach made several failed attempts to contact Walker regarding her complaint before he was contacted by a nurse at the Rape Crisis portion of the Nord Center facility. According to Kovach, the call was in regard to Walker, who was at the Nord Center. Kovach spoke with Walker and made arrangements to speak with her in person later that day. Walker did not keep the agreed upon appointment. Several weeks later, Kovach again spoke with Walker. According to Kovach, Walker did not want to go forward *Page 15 
with a rape complaint against Barrios. Kovach also spoke with Mauricio and then forwarded his investigation report on to the Lorain County Grand Jury. Kovach testified that at least half of the victims he deals with do not immediately report a rape.
 {¶ 29} After the State rested its case, the jury heard testimony from Walker. Walker testified that she had asked Mauricio to move out of her home in mid-January of 2005. She further explained that in late February of 2005, her relationship with Barrios was "on the rocks. It was shaky." Walker terminated the relationship at the end of February. Around this time she called the police to report "[a] money situation. I called them to say that [Barrios] stole money from me." She also informed police at that time that Barrios "took advantage" of her. She explained that she made this statement because she was angry with Barrios because he had cheated on her with Mauricio. She testified that Barrios never took advantage of her. She further stated that she told Mauricio to tell the police that Barrios had raped her. Walker testified that she informed Kovach that she did not want to pursue anything because "there was a misunderstanding," and that she "said things that I didn't mean." Essentially, Walker testified, she had lied to the police about Barrios taking advantage of her. On cross-examination, Walker admitted that in 2004 she was convicted of theft and that in the present instance she lied to the police. She also testified that she did not like Mauricio. Walker stated that she had lied to police about her initial complaint that Barrios had taken *Page 16 
money from her, that he had taken advantage of her and that he had raped Mauricio. She confirmed that she had lied about Barrios stealing money from her because she was mad at him. The State then asked her "[s]o if you're mad at somebody * * * you have the ability to lie about them, right?" Walker answered that yes, she did at the time, but that she had changed and was not lying at the trial. She further confirmed that she had gone to the Nord Center, but stated that she went to talk with someone about her depression. When asked if she told the nurse at the Nord Center that she had been sexually assaulted, she stated that she could not recall. She further denied speaking to Kovach while at the Center. Finally, Walker admitted that she was still in love with Barrios.
 {¶ 30} Sitting as the "thirteenth" juror, we agree with the jury's decision to disbelieve Walker's testimony. It is clear that Walker's testimony was biased in that she had been angry with Mauricio and was admittedly still in love with Barrios. Her motive to protect him by changing her story is obvious. We note also that Walker admitted to a previous crime of deception, thus her credibility is called in to question. Further, we find that many of her statements were contradictory to those made by the investigating officers and Mauricio. Therefore, we cannot find that the jury created a manifest miscarriage of justice when it declined to believe Walker's versions of events. Accordingly, Barrios' fourth assignment of error is overruled.
 III. *Page 17 {¶ 31} Barrios' assignments of error are overruled. The decision of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 18 
BAIRD, J. CARR, P.J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1