[Cite as *State v. Ventura*, 2024-Ohio-498.]

STATE OF OHIO         )            IN THE COURT OF APPEALS
                         )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )

STATE OF OHIO                   C.A. No.      22CA0028-M

    Appellee

    v.                            APPEAL FROM JUDGMENT
                               ENTERED IN THE
MATTHEW J. VENTURA        MEDINA MUNICIPAL COURT
                               COUNTY OF MEDINA, OHIO
    Appellant                CASE No.    21CRB00822

DECISION AND JOURNAL ENTRY

Dated: February 12, 2024

---

STEVENSON, Judge.

{¶1} Defendant-Appellant Matthew Ventura appeals from the judgment of the Medina Municipal Court finding him guilty after a jury trial of criminal trespass in violation of R.C. 2911.21(A)(1), a fourth-degree misdemeanor. For the following reasons, we affirm.

I.

{¶2} This matter arises out of a May 2021, incident that occurred at a Worcester Lane, Medina, Ohio residence ("the residence"). Mr. Ventura and A.V. married in 2010 and resided at the residence, deeded in A.V.'s name.

{¶3} The parties agreed that there were times throughout the marriage when, at A.V.'s request and due to marital difficulties, Mr. Ventura left the residence. On average, Mr. Ventura left the residence two times a year.

{¶4} Mr. Ventura purchased a condominium in the summer of 2020 when an ex parte temporary protection order was in place. Mr. Ventura testified that he did not have any furniture

at, and never moved into, the condominium. Except for some clothing, Mr. Ventura testified that he did not have any other possessions at the condominium.

{¶5} At times relevant to this matter, A.V. requested that Mr. Ventura leave and she locked him out of the residence on May 4, 2021. At this time, A.V. started locking a separate deadbolt on the front door to which Mr. Ventura did not have a key. A.V. also reprogrammed the garage door's electronic keypad and separately locked the garage door so that Mr. Ventura could not gain access to the residence.

{¶6} After Mr. Ventura left the residence in May 2021, A.V. agreed that he could participate in their minor child's upcoming birthday party. Because A.V. did not want Mr. Ventura inside the residence, the party was set to be held in the backyard.

{¶7} Mr. Ventura texted A.V. at 9:00 a.m. on May 22, 2021, indicating that he was going to the residence at 2:00 p.m. to start setting up the pool in the backyard. A.V. responded "[n]o. Do not come over matt[.]" Mr. Ventura again indicated that he would be at the residence at 2:00 p.m., and A.V. responded "Lol ok. I will not be home[.]"

{¶8} Mr. Ventura again texted A.V. at 1:50 p.m. on May 22, 2021, stating that he was "heading over now." A.V. responded to this text at 4:00 p.m., indicating that she was "on a work call[.]"

{¶9} Mr. Ventura and his adult children went to the residence on May 22, 2021, and worked for about two hours in the backyard before A.V. returned to the residence. A.V. was upset that Mr. Ventura was there and she left without getting out of her car. At this point, neither Mr. Ventura nor his children had entered the residence.

{¶10} Before leaving the residence, Mr. Ventura wanted possession of a motorcycle and AR15. Mr. Ventura testified that, after calling a police colleague for guidance, he called a

locksmith to open the front door lock and the Medina Township sheriff's department for a standby assist.

**{¶11}** Locksmith M.T. testified that he responded to a call at the residence on May 22, 2021. Before picking the front door lock, M.T. testified that he checked Mr. Ventura's identification to make sure that the residence was his listed address. M.T. picked the front door lock and, at Mr. Ventura's request, he stayed at the residence until the sheriff's deputy arrived.

**{¶12}** Before responding to the residence for a standby assist, Deputy J. Furey testified that he confirmed Mr. Ventura's address through an Ohio database. Mr. Ventura's address was confirmed as being at the residence. Deputy Furey also made sure there were no protection orders or any other orders in place prohibiting Mr. Ventura from being at the residence that day.

**{¶13}** Because Deputy Furey was aware of the history between Mr. Ventura and A.V., he contacted an on-shift supervisor before allowing Mr. Ventura to enter the residence. Deputy Furey accompanied Mr. Ventura into the residence once he received an okay from his supervisor.

**{¶14}** Mr. Ventura and Deputy Furey entered the residence through the front door and went through the home and into the garage. After Deputy Furey verified that the motorcycle was registered to Mr. Ventura, Mr. Ventura took the motorcycle and a helmet out of the garage and closed the garage door. The parties left the residence without locating the AR15.

**{¶15}** Some neighbors of the residence also testified. Next door neighbor, M.M., was aware of difficulties in the Venturas' marriage and knew that there were times when Mr. Ventura left the residence. M.M. saw Mr. Ventura in the residence's backyard on May 22, 2021, and took a gift over for the child. M.M. testified that when she gave the gift to Mr. Ventura, he said that "he would try to get it" to the child. According to M.M., Mr. Ventura "acted like maybe, maybe he had a little bit of trouble getting it to [the child][.]" M.M. saw Mr. Ventura get the child off the

school bus "[e]very day[.]"  M.M. last saw Mr. Ventura at the residence a day or two before the May 22, 2021, incident.

{¶16}  Neighbor R.S. was present when M.M. brought the gift to the residence on May 22, 2021. R.S. testified that when M.M. gave the gift to Mr. Ventura, Mr. Ventura said that he would try to get the gift to the child and that he was not currently living at the residence. R.S. was aware of another time when, because of marital difficulty, Mr. Ventura did not live at the residence.

{¶17}  Mr. Ventura was charged with falsification and criminal trespass after the May 22, 2021, incident at the residence. Mr. Ventura pleaded not guilty to the charges. Prior to trial, the court granted the State's motion in limine pertaining to exhibits Mr. Ventura argued were relevant to whether A.V. had sole custody or control of the residence on the date of the incident. The matter proceeded to a jury trial and the jury found Mr. Ventura not guilty of falsification and guilty of criminal trespass. The trial court sentenced Mr. Ventura to a $250 fine and denied Mr. Ventura's motion for a new trial. Mr. Ventura appeals, raising four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT CLEARLY ABUSED ITS DISCRETION BY FAILING TO ADMIT RELEVANT AND PROBATIVE EVIDENCE TENDING TO SHOW THAT MATTHEW VENTURA JOINTLY EXERCISED CUSTODY AND CONTROL OVER THE MARITAL RESIDENCE AND THUS WAS PRIVILEGED TO BE AT AND TO ENTER THAT HOME ON MAY 22, 2021.**

{¶18}  Mr. Ventura argues in his first assignment of error that the trial court abused its discretion when it granted the State's motion in limine. We disagree.

{¶19}  Mr. Ventura was found guilty of criminal trespass in violation of R.C. 2911.21(A)(1), which states, "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another."  "Privilege" is defined as "an immunity, license, or

right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶20} The Ohio Supreme Court has held that, "in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property." *State v. Lilly*, 87 Ohio St.3d 97, 102 (1999). Specifically, "a spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." *Id.* at paragraph one of the syllabus. *Accord State v. O'Neal,* 87 Ohio St.3d 402, 408 (2000) ("a spouse can be convicted of trespass * * * in the dwelling of the other spouse who owns, has custody of, or control over the property where the crime has occurred.")

{¶21} The State filed a motion in limine prior to trial, arguing that Mr. Ventura's proposed exhibits were not relevant to the issue of who had custody and control of the residence on May 22, 2021. The State sought to bar the admission of the following exhibits: a) PNC bank account statements recording withdrawals between September 2019 and August 2021 for utility bills, presumably associated with the residence; b) a pleading from a 2017 lawsuit filed by Fennway Pointe Homeowners Association, Inc. against A.V. and Mr. Ventura; c) proof of an April 26, 2021 purchase from Amazon.com; d) auto declarations from May 27, 2021 – May 27, 2022; e) homeowner declarations from October 19, 2020 – October 19, 2021; f) a billing statement from Center for Revolutionary Relationships for services provided in February, 2021; g) Mr. Ventura's driver's license issued on August 21, 2017; h) Mr. Ventura's Sherwin Williams pay stubs for January 2021 – May 2021; i) AT&T phone bills, in Mr. Ventura's name, for April and May 2021; j) a civil complaint filed on April 14, 2021, by Mr. Ventura and A.V. in the Medina County Court of Common Pleas; k) a Home Depot rental agreement cover sheet for a May 1, 2021 rental; l) a September 23, 2021 summons issued to Mr. Ventura; m) Mr. Ventura's Medina Township police

department pay stubs from December 2020–July 2021; n) an April 2021 audio recording; and, o) a July 2021 audio recording of a conversation between Mr. Ventura and Deputy Girard. Mr. Ventura withdrew proposed exhibit n, the April 2021 audio recording, prior to trial.

{¶22} This Court notes that proposed exhibits m and o are not part of the record on appeal. "'The obligation to ensure that the record on appeal contains all matters necessary to allow this court to resolve the issues on appeal lies with the appellant[]' and this Court has 'consistently held that, where appellant has failed to provide a complete record to facilitate appellate review, [we are] compelled to presume regularity in the proceedings below and affirm the trial court's judgment.'" *State v. Rones*, 9th Dist. Summit No. 30073, 2023-Ohio-60, ¶ 8, quoting *State v. Daniel*, 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5. Because exhibits m and o are not part of the record on appeal, this Court must presume regularity in connection with the trial court's decision to grant the motion in limine as to these exhibits. We will proceed to address Mr. Ventura's assignment of error as it relates to proposed exhibits a – l.

{¶23} The trial court held oral arguments on the State's motion in limine prior to trial. The State argued that A.V. assumed custody and control of the residence when Mr. Ventura left on May 4, 2021, and that the evidence Mr. Ventura sought to introduce was irrelevant as to whether a criminal trespass was committed. Mr. Ventura argued that the evidence demonstrated he never relinquished custody or control of the residence, including in May of 2021. The trial court granted the State's motion, finding in its oral ruling and written judgment entry that the proffered exhibits were irrelevant as they pertained to title of the residence rather than the pertinent issue of custody or control on May 22, 2021. The trial court also determined in its written judgment entry that the "marginal relevance" the exhibits had to the issue of custody and control "was substantially

outweighed by the risks of either misleading and/or confusing the jury[.]" Mr. Ventura argues on appeal that this ruling was an abuse of discretion.

{¶24} "'The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.'" *State v. Spy*, 9th Dist. Summit No. 27450, 2016-Ohio-2821, ¶ 14, quoting *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43. The Ohio Supreme Court wrote in *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), that an abuse of discretion is more than an error of law or in the exercise of judgment. The Court noted in *Blakemore* that abuse of discretion "implies that the court's *attitude* is unreasonable, arbitrary or unconscionable." (Emphasis added.). *Id.* at 219.

{¶25} A court of appeals must not substitute its judgment for that of the trial court. *Id.* Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24. Thus, even if this Court disagrees with the conclusion reached by the trial court, it should be reluctant to find an abuse of discretion. *See State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, ¶ 18.

{¶26} Evid.R. 401 states that "relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403(A) states:

> Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"Evidence which is not relevant is not admissible." Evid.R. 402.

{¶27} We conclude that the trial court did not abuse its discretion in granting the State's motion in limine. Pursuant to the Supreme Court's holdings in *Lilly*, 87 Ohio St.3d 97, and *O'Neal*, 87 Ohio St.3d 402, at issue was whether A.V., Mr. Ventura, or both had custody and control of the residence on the specific date of May 22, 2021. While a prior lawsuit; driver's license; bills; a rental agreement; insurance declarations; bank statements; pay stubs; and purchases may show that Mr. Ventura lived at the residence and contributed toward household expenses, they had no tendency to prove who had custody and control of the residence on May 22, 2021. The trial court did not abuse its discretion in concluding that the marginal relevance of the proffered exhibits, if any, was substantially outweighed by the risk of confusing or misleading the jury. Evid.R. 403(A).

{¶28} Even if we were to conclude that the trial court erred in failing to admit the proffered exhibits, we can only conclude that any error was harmless. Crim.R. 52(A) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." As this Court has stated, "[i]t is a fundamental rule of evidence that error cannot be based on a ruling which excludes evidence unless a substantial right of the party is affected, and 'the substance of the evidence was made known to the court by offer or was apparent from the context[.]'" *State v. Barrios*, 9th Dist. Lorain No. 06CA009065, 2007-Ohio-7025, ¶ 8, quoting Evid.R. 103(A)(2).

*Accord State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 59 (concluding that the admission of cumulative evidence was harmless error).

{¶29} Mr. Ventura was permitted to introduce ample evidence to support his defense that A.V. did not have exclusive custody and control of the residence. M.M. testified that she saw Mr. Ventura get his child off the bus every day at the residence. The locksmith testified that he checked Mr. Ventura's identification and verified that the residence was Mr. Ventura's address. Deputy Furey testified that he confirmed Mr. Ventura's address through an Ohio database and verified that there was nothing legally prohibiting Mr. Ventura from being at the residence on May 22, 2021. Deputy Furey also testified that the motorcycle was registered to Mr. Ventura. A.V. acknowledged at trial that Mr. Ventura was living at the residence as of March, 2021, and at the beginning of May, 2021. A.V. acknowledged that she was not legally separated from Mr. Ventura on the date of the incident. Mr. Ventura testified as to his co-habitation at the residence, the history of which was undisputed by A.V.'s trial testimony. Mr. Ventura testified that the residence was his primary address; that he received his mail at the residence; and that the residence is the address listed on his vehicle registrations.

{¶30} The jury heard the same evidence pertaining to title and ownership that Mr. Ventura sought to introduce. Mr. Ventura's proposed exhibits would have been cumulative of this testimony. Ohio "'[c]ourts have not hesitated to find that error is harmless where the excluded evidence is merely cumulative to other compelling evidence.'" *State v. Rivera*, 9th Dist. Lorain No. 22CA011875, 2023-Ohio-1788, ¶ 51, quoting *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 9. *See also State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 19 ("because the same evidence Defendant sought to introduce * * * was admitted via other means, and permitted Defendant to ask the jury to draw the same conclusions, the trial court's

error in excluding that * * * testimony was harmless error at best."). Further, as outlined in discussing Mr. Ventura's assignments of error regarding the weight and sufficiency of the evidence, there was ample evidence produced by the State establishing A.V. had exclusive control or custody of the property as required by *Lilly*, 87 Ohio St.3d 97. Accordingly, as the jury heard ample testimony as to title and ownership, we cannot say that the trial court's exclusion of the proffered exhibits affected Mr. Ventura's substantial rights. Crim.R. 52(A).

{¶31} For the reasons set forth above, Mr. Ventura's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN DENYING MATTHEW VENTURA'S MOTION FOR ACQUITTAL MADE AT THE CLOSE OF THE STATE'S CASE AND AT THE CLOSE OF ALL THE EVIDENCE.**

{¶32} Mr. Ventura argues in his second assignment of error that the trial court should have granted his motion for acquittal at the close of the State's case and again at the close of all the evidence. We disagree.

{¶33} Under Crim.R. 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law that is subject to a de novo review. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, the court's "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶34} A spouse can be guilty of criminal trespass if it is established that the spouse did not have custody or control of a shared residence at the time of the offense. *O'Neal*, 87 Ohio St.3d

at 408; *Lilly*, 87 Ohio St.3d at paragraph one of the syllabus. Custody or control are pertinent issues in determining whether someone committed criminal trespass.

{¶35} A.V. testified that Mr. Ventura was removed from the residence on May 4, 2021. A.V. started securing the residence by locking a front door deadbolt, to which she knew Mr. Ventura did not have a key; reprogramming the garage door's electronic keypad; and separately locking the garage door so that Mr. Ventura could not gain access to the residence. Mr. Ventura acknowledged that he left the residence as of May 4, 2021, and that he had not returned.

{¶36} The jury heard testimony and saw text exchanges between Mr. Ventura and A.V. regarding Mr. Ventura going to the residence on May 22, 2021. The jury heard testimony about Mr. Ventura being removed from the residence, Mr. Ventura's attendance at the child's upcoming birthday party, and A.V.'s representation that Mr. Ventura was not to enter the residence during the party. The jury heard testimony from neighbor R.S. who testified that, based on Mr. Ventura's representation, he was not living at the residence on May 22, 2021. Neighbor M.M. similarly testified as to the trouble Mr. Ventura was going to have getting her gift to the child. As he was getting the motorcycle out of the residence's garage, Mr. Ventura is heard on Deputy Furey's body camera video saying, "she is going to be so pissed." Mr. Ventura admitted that he entered the residence, so the issue of his presence inside the residence was not in dispute.

{¶37} Viewing the evidence in a light most favorable to the State, there was evidence that Mr. Ventura did not have custody or control of the residence on May 22, 2021 and that, without privilege to do so, he knowingly entered the residence of another in violation of R.C. 2911.21(A). *See O'Neal*, 87 Ohio St.3d 402; *Lilly*, 87 Ohio St.3d 97. The trial court did not err when it denied Mr. Ventura's motion for judgment of acquittal. Mr. Ventura's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE JUDGMENT OF CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶38}** Mr. Ventura argues in his third assignment of error that his criminal trespass conviction is against the manifest weight of the evidence. We disagree.

**{¶39}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest of miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins,* 78 Ohio St.3d at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶40}** "When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record[.]" *State v. Bullard*, 9th Dist. Wayne No. 20AP0032, 2021-Ohio-4044, ¶11. This Court must "'weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *Otten*, 33 Ohio App.3d at 340. "'A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction.'" *Bullard*, at ¶ 11, quoting *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. *See also Thompkins* at 387.

{¶41} Mr. Ventura argues that his criminal trespass conviction is against the weight of the evidence because he and A.V. had joint custody and control of the residence. Mr. Ventura maintains that, even though he vacated the residence as of May 4, 2021, A.V. had no right to claim that she alone had custody and control of the residence.

{¶42} A.V. and Mr. Ventura both testified that Mr. Ventura had not slept at the residence since May 4, 2021. On the day of the incident, A.V. told Mr. Ventura in a text "No. Do not come over matt." A.V. testified that she did not give Mr. Ventura permission to enter the residence on May 22, 2021. As of May 4, 2021, A.V. started locking a separate deadbolt on the front door to which she knew Mr. Ventura did not have a key. A.V. also reprogrammed the garage door's electronic keypad and separately locked the garage door so that Mr. Ventura could not gain access to the residence. Mr. Ventura had to utilize a locksmith to gain access to the residence on May 22, 2021. Mr. Ventura was not sleeping at the residence as of May 22, 2021. Neighbor R.S. testified that, based on Mr. Ventura's representation, he was not living at the residence on May 22, 2021 and that he would have trouble getting her gift to the child.

{¶43} The jury was in the best position to assess the credibility of the testifying witnesses and decide whether A.V. had sole custody or control of the residence on May 22, 2021. *See State v. Senz*, 9th Dist. Medina No. 17CA0001-M, 2018-Ohio-628, ¶ 25, citing *State v. Binford*, 9th Dist. Summit No. 27950, 2016-Ohio-7678, ¶ 10 (recognizing that the jury is in the best position to assess the credibility of witnesses and that the Court will not overturn a verdict "'on a manifest weight of the evidence challenge simply because the jury chose to believe certain witness testimony.'") Upon review of the record, we find that Mr. Ventura has not established that this is the exceptional case where the evidence weighs heavily against his criminal trespass conviction. Mr. Ventura's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT ERRED IN DENYING MATTHEW VENTURA'S MOTION FOR A NEW TRIAL.**

**{¶44}** Mr. Ventura argues in his fourth assignment of error that the trial court erred when it denied his motion for a new trial. We disagree.

**{¶45}** Crim.R. 33(A) allows a defendant to move for a new trial when his substantial rights have been materially affected. Crim.R. 33(A)(6) permits a defendant to move for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial." To establish that a new trial is warranted based on newly discovered evidence, the defendant must show that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

**{¶46}** An appellate court reviews a trial court's ruling on a motion for new trial under an abuse of discretion standard of review. *State v. Roper*, 9th Dist. Summit No. 29466, 2021-Ohio-188, ¶ 8, citing *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 47. "Abuse of discretion," as previously set forth, "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore*, 5 Ohio St.3d at 219. "When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court." *Roper* at ¶ 8, citing *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621.

**{¶47}** Mr. Ventura moved for a new trial on the basis that, since trial, he discovered a May 21, 2021, text exchange purportedly between his son and A.V. Son states in the text that his

"dad asked me if I could come over tomorrow to come help put up the pool, I'll be over in the afternoon." A.V. responds "Perfect!!! See you tomorrow." Mr. Ventura argues that, had the jury seen this text exchange, there is a strong probability it would have found reasonable doubt as to whether he was privileged to enter the residence on May 22, 2021.

{¶48} In considering Mr. Ventura's motion for new trial, the trial court noted that son states in the text that "*I'll* be over in the afternoon" and A.V. responds "[p]erfect!!! See *you* tomorrow." (Emphasis sic.) There is no reference to the fact that Mr. Ventura will be at the residence and/or that A.V. approved or acknowledged Mr. Ventura would be present the next day.

{¶49} "The 'mere possibility' that a new trial might lead to a different outcome is not a sufficient basis upon which to grant a motion for a new trial." *State v. Bressi*, 9th Dist. Summit No. 29257, 2020-Ohio-4, ¶ 26, citing *State v. Prade*, 9th Dist. Summit No. 28193, 2018-Ohio-2551, ¶ 41. The trial court did not abuse its discretion when it determined that the probability of the text exchange between son and A.V. would have led to a different trial outcome was negligible at best.

{¶50} We also cannot say that the trial court abused its discretion when it found that the subject text exchange could not have been discovered prior to trial. Son was present on May 22, 2021, and testified at trial. With the knowledge that Mr. Ventura's right and permission to be at the residence on May 22, 2021, was at issue, this text exchange would have been discovered had due diligence been exercised. *See State v. Mosley*, 9th Dist. Wayne No. 19AP0016, 2020-Ohio-5047, ¶53 (knowing the issues in the case, defendant could have discovered the evidence at issue with due diligence).

{¶51} The trial court did not abuse its discretion when it found that the alleged new evidence, regardless of whether it was cumulative, was of dubious materiality. It was undisputed

that Mr. Ventura was present on the property on May 22, 2021. At issue was whether Mr. Ventura had custody or control of the residence on May 22, 2021. The jury heard testimony and was presented evidence on this issue. The presented evidence included the text exchange between A.V. and Mr. Ventura on May 22, 2021. The alleged knowledge that son would be at the property on May 22, 2021, is immaterial.

{¶52} We cannot say that the trial court abused its discretion when it denied Mr. Ventura's motion for a new trial. Mr. Ventura's fourth assignment of error is overruled.

### III.

{¶53} Mr. Ventura's assignments of error are overruled. The criminal trespass conviction is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶54} I respectfully dissent as I would sustain Mr. Ventura's first assignment of error pertaining to the trial court's decision to grant the motion in limine.

{¶55} There is no dispute that, under certain circumstances, "a spouse can be convicted of trespass * * * in the dwelling of the other spouse who owns, has custody of, or control over the property where the crime has occurred." *State v. O'Neal*, 87 Ohio St.3d 402, 408 (2000), citing *State v. Lilly*, 87 Ohio St.3d 97 (1999), paragraph one of the syllabus. Here, the analysis of whether A.V. had custody or control of the marital residence on the date of the incident must account for the unconventional circumstances of Mr. Ventura and A.V.'s marriage. Although Mr. Ventura and A.V. lived together at the martial residence, Mr. Ventura would, on occasion, spend time away from the martial residence when tensions arose. The circumstances in this case were further complicated by the fact that Mr. Ventura and A.V. had an understanding that Mr. Ventura would be at the marital residence for a birthday party.

{¶56} At the pretrial hearing on the motion in limine, Mr. Ventura emphasized the unconventional nature of his marriage to A.V. Mr. Ventura sought to introduce the exhibits in question in order to demonstrate that, while he had left the martial residence on occasion in the

years leading up to the incident, he had never previously relinquished custody or control of the marital residence, nor did he relinquish custody or control of the martial residence on the date of the incident. The trial court granted the motion in limine on the basis that the exhibits were not relevant. I would hold that the exhibits were acutely relevant to the custody or control analysis given the martial dynamics at play in this case. Furthermore, given the fact that this case largely turned on credibility as well as the trier of fact's understanding of Mr. Ventura's connection to the martial residence, I would conclude that the exclusion of the evidence was prejudicial.

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellant.

ROBERT B. CAMPBELL and MEGAN A. PHILBIN, Attorneys at Law, for Appellee.